Order of International Fraternal Alliance *vs.* State.

(Decided 21st June, 1893.)

THE ORDER OF THE INTERNATIONAL FRATERNAL ALLIANCE OF BALTIMORE CITY *vs.* STATE OF MARYLAND.

*Life insurance—Endowment association—Amenability to Insurance laws of the State—Forfeiture of Charter.*

Where members of an association, incorporated "for social or fraternal beneficial purposes, or both," pay entrance fees, monthly dues, and assessments from time to time as the same may be ordered, and the association from funds thus raised, pays to its members a specific sum in case of sickness, accident or death, or maturity benefits at the expiration of a fixed period of time, it does an insurance business within the inhibition of section 127 of Article 23, of the Code, although it has a lodge system and ritual.

But the charter of such association will not be forfeited, thereby bringing disaster upon a large number of persons, but it will be permitted to resort to the appropriate jurisdiction to adjust and wind up its insurance business, and to continue the exercise of its authorized powers as a "social or fraternal beneficial order, or both," or it may amend its charter under sections 17 and 38, of Article 23, of the Code, and thus bring itself within the provisions of the insurance laws of the State.

Order of International Fraternal Alliance *vs.* State.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, ROBERTS, MCSHERRY, and BRISCOE, J.

*Henry Duffy, Charles Marshall,* and *Wm. Pinkney Whyte,* for the appellant.

*John Prentiss Poe, Attorney-General,* for the appellee.

In support of the contention that the charter of the appellant should be forfeited, the following authorities were referred to:

*State vs. Browner,* 15 *Mo. App.,* 597; *State vs. Merchants' Exch. Mut. Benevo. Soc.,* 72 *Mo.,* 146; *State vs. Nichols,* 78 *Iowa,* 747; *Commonwealth vs. Wetherbee,* 105 *Mass.,* 160; *State vs. Standard Life Asso.,* 38 *Ohio,* 281; *Bolton vs. Bolton,* 73 *Maine,* 299; *Farmer vs. State,* 69 *Texas,* 561; *State vs. Nat'l Asso., &c.,* 35 *Kansas,* 51; *Endowment & Ben. Asso. vs. State,* 35 *Kansas,* 253; *Dixon vs. Order of Railway Conductors,* 21 *Ins. Law Journ.,* 692; *Masonic Aid Asso. vs. State, Ibid.,* 695; *Berry vs. Knights Templars, &c.,* 46 *Fed. Rep.,* 442; *Bacon on Benefit Societies, secs.* 50-56, *and cases there cited.*

ROBERTS, J., delivered the opinion of the Court.

The appellant was, on the 5th of January, 1889, incorporated under the provisions of Article twenty-three of the Code of Public General Laws of this State. By the second paragraph of its certificate of incorporation, it appears "that the said corporation so formed is a corporation for social or fraternal beneficial purposes, or both, and to carry out which it shall enact a constitution and laws for its government, which shall prescribe and define the duties of its officers, its mode of govern-

ment and methods of conduct, and the various means whereby it may aim to improve and benefit its members, their families, or those having a legal interest therein. The members of said Order shall convene in assemblies (or local bodies) and shall conduct their operations by and according to the ritual of the Order aforesaid, and in conformity with the charter, constitution and laws of the Order at all times." Upon its organization it adopted a constitution and code of general laws, which clearly outlined the character of business proposed to be conducted by it; section 2, of Article one, of the constitution declaring the object of the Order to be "to benefit its members morally, intellectually and financially." Section 4 of the same Article provides, that "one of the purposes of this organization shall be the establishment of a benefit fund for the relief of its members in sickness, accident or distress, or for their families or heirs in case of their decease, and also to encourage habits of economy and frugality by a provision whereby those of the members of this Order who desire to, shall be allowed to pay into a common fund, which may be distributed at definite intervals succeeding the date of the certificate, which may be written in favor of said member, with this benefit provision or provisions thereon."

We have carefully examined the methods which have been adopted by the appellant to accomplish the purposes for which it became a body corporate, and we are convinced that no better estimate could be formed of the manner in which the appellant exercised its corporate powers than by giving *in extenso* copies of the two policies which it has been issuing to its members. They constitute, in connection with the terms and conditions thereon written, the ground of controversy in this cause, and give practical illustration of the methods resorted to by the appellant to further its purposes. They furnish in themselves the evidence which must in great measure

control us in seeking to determine the character of business the appellant is conducting. They are as follows:

## UNITED STATES OF AMERICA.

THE INTERNATIONAL FRATERNAL ALLIANCE OF BALTO. CITY.

No.———　　　　　　　　　　　　　　　　$———.

*Membership Policy in the Golden Cycle Class.*

This policy is issued to ——— Golden Cycle of ——— member of ——— Assembly No. ——— of ——— in the Order hereinafter named, on condition that all of the written or printed statements made by said member, or contained in or on the application for membership, which is filed in the office of the cabinet of the Order, together with the provisions and conditions upon the back hereof, be made a part of this contract, and that said member (or the representatives of said member), complies with the constitution, laws and rules of government now governing or that may hereafter be enacted for the government of this class of the Order, and that this policy be in force when the benefit may accrue. In consideration whereof The Order of the International Fraternal Alliance of Baltimore City, hereby agrees to pay out of the beneficiary fund of said class, not exceeding the sum of ——— dollars, to ——— at its office in Baltimore, Maryland, in accordance with and under the provisions of the laws governing said fund of said class, and the Order, upon satisfactory evidence to the officers of the cabinet of the Order, of the accruing of any benefit hereunder, and upon the surrender of this policy, or of a receipt therefor.

In testimony whereof, The Order of the International Fraternal Alliance of Baltimore City, have caused this policy to be signed by the president and secretary of its cabinet, and its official seal to be attached at its office in

Order of International Fraternal Alliance *vs.* State.

Baltimore, Maryland, this ———— day of ———— A. D. eighteen hundred and ————.

[Seal.] ————————,

*Secretary of the Cabinet.*

————————,

*President of the Cabinet.*

On the back is the following, to wit: Specific articles of laws and rules of the Order of the International Fraternal Alliance of Baltimore City, referred to herein.

## THE GOLDEN CYCLE CLASS.

Memberships shall be paid according to the date of admission to this class. All benefits paid prior to the expiration of the seven year period shall be deducted at six per cent., compound interest, from the principal sum then due—or likewise in case of prior death. Assessments in the ratio of $1.25, shall be called by the cabinet of the Order as requisite for the benefits accruing due, and to be paid; provided, however, that for the first year each policy shall pay the sum of $2.25 monthly, and provided further, that all future sums due shall be collected monthly.

After 77 days membership, any member will be entitled upon each policy, for any wholly disabling sickness or accident then accruing, to the sum of $7 each 7 days for not exceeding 77 days each 7 months from date benefits were in force or date of notice to Order.

No member shall be allowed more than 7 policies in this class, and according to the following

## ILLUSTRATIVE TABLE,

or the expiration of policies and payment of benefits that shall accrue:

Order of International Fraternal Alliance *vs.* State.

| Ages. | Full Policy. | Number of 7 year periods payable in. | Amount payable each 7 year period or at death. |
|---|---|---|---|
| 17 to 25 | $ 4,900 | 7 | $ 700 |
| 25 " 32 | 4,200 | 6 | 700 |
| 32 " 39 | 3,500 | 5 | 700 |
| 39 " 46 | 2,800 | 4 | 700 |
| 46 " 53 | 2,100 | 3 | 700 |
| 53 " 60 | 1,400 | 2 | 700 |
| 60 " 67 | 700 | 1 | 700 |

Loans may be made from surplus in this class to members of over 2 years standing, at the rate of $100 for each completed year for each policy.

### SICK BENEFIT LIMITATIONS.

The Golden Cycle Class shall grant sick benefits as follows: They shall not be paid for less than seven days actual confinement to bed from date of mailing of notice to the cabinet. The maximum number of days for which sickness shall be paid for, shall be seventy-seven in any seven consecutive months; provided that no person shall be entitled to said benefits until they shall have been members in good standing in the order for not less than seventy-seven days. No sick benefits shall be paid for rheumatic, gouty or neuralgic complaints, venereal diseases, confinement, abuse of person, chronic diseases, diseases peculiar to women, those caused by reckless exposure, broils or intemperance. All claims for sick benefits shall be sworn to upon blanks furnished for that purpose by the Order. If the claim result by means of an accident rated above class 3 in the Order's Accident Manual, $1 may be deducted for each class rated higher than class 3 in which the injury has oc-

curred, this amount to be deducted weekly from each policy held by the assured in this class.

## DEATH BENEFIT LIMITATION.

If the member shall reside or remain in any city, town or district after yellow fever, or any other contagious disease is epidemic in such city, town or district, and if death shall ensue from the effects thereof, or from yellow fever or other contagious disease, or if the member during the continuance of this policy shall engage in blasting, mining, submarine or æronautic operations, Arctic explorations, or the production of highly inflammable or explosive substances, in service upon any railroad train or in switching, or in coupling cars, or on a steam or other vessel, or military or naval service in time of war, and death shall ensue by or through violence, accident, or injuries received while engaged in such employment or operations, or in any other occupation equally prejudicial to health or longevity, then the beneficiary shall only receive from the cabinet of the Order from 25 to 75 per cent. of the face value of the within policy, as the said cabinet, according to the hazard and circumstances, may determine.

## MATURITY BENEFITS ONLY.

This Order may issue in its Golden Cycle, to such persons as may desire to accept the same, policies of membership for maturity benefits only; said maturities to be at the expiration of the same periods and in the same amounts as is the usual custom in the said Golden Cycle Class. The Order may, at the option of its cabinet, provide a separate form of policy therefor, or it may stamp or endorse in a conspicuous place upon the face of the regular and usual form of policy of the said Golden Cycle Class, the words "the insured under this policy is

entitled to maturity benefits only.'' In the latter event, then there shall not be due under any such policy either any disability or death benefit, should the insured thereunder become disabled or die during the continuance in force of any such stamped or endorsed policy, except as follows: In the event of the death of the insured under the said stamped or endorsed policy before the completion of any period of maturity, then all payments made on account of the said policy shall be repaid to the beneficiary of the said named, less an equitable portion of the same for expenses incurred thereupon by the Order, or the said beneficiary may carry the same until matured and receive the benefit then due. The payments required and due under the said policies of membership for maturity benefits only, shall be two dollars per month during the first year of membership thereunder of the insured, and one dollar per assessment thereafter during the continuance of the policy.

The following is the form of policy hereinbefore referred to:

### UNITED STATES OF AMERICA.

## THE INTERNATIONAL FRATERNAL ALLIANCE.

*Grade of Policy, Two*

No. ———.                                              $ ———.

*Membership Policy in the Golden Cycle Class.*

This policy is issued to ———, of Baltimore, Maryland; aged 22, a member of ——— Assembly, No. ——— of Baltimore, Maryland, in the Order hereinafter named, on condition that all of the written or printed statements made by said member or contained in or on the application for membership, which is filed in the office of the cabinet of the Order, together with the provisions

and conditions upon the back hereof, be made a part of this contract, and that said member (or the representatives of said member,) complies with the constitution, laws and rules of government now governing or that may hereafter be enacted for the government of this class of the Order, and that this policy be in force, when the benefit may accrue. In consideration whereof The Order of the

### International Fraternal Alliance of Baltimore City,

hereby agrees to pay out of the beneficiary fund of said class, not exceeding the sum of seven hundred dollars (renewable in like amounts each 7 years as per illustrative table on the reverse side, to ———.)

(All benefits during life being payable to the member, unless otherwise stated in the application,) at its office in the city aforesaid, in accordance with and under the provisions of the laws governing said fund of said class, and of the Order, upon satisfactory evidence to the officers of the cabinet of the Order, of the accruing of any benefit hereunder, and upon surrender of this policy, or of a receipt therefor.

In testimony whereof, the Order of the International Fraternal Alliance in the city aforesaid, have caused this policy to be signed by the president and secretary of its cabinet, and its official seal to be attached this ——— day of ———, A. D., eighteen hundred and ninety-one.

*President of the Cabinet.*

| Seal. |

*Secretary of the Cabinet.*

It was asserted at the argument in this Court and not denied, that such had been the progress made by the appellant within a period of four years, that it now had

members exceeding eight thousand, and assets in excess of the sum of three hundred thousand dollars. Doubtless its very success called the attention of the State's officers to it, and suggested an inquiry into its business methods. . At all events, the Attorney-General, by direction of the Governor, (acting under the provisions of sec. 255, of Art. 23 of the Code,) filed in the Supreme Court of Baltimore City, on the first of September, 1892, a petition in the name of the State against the appellant, praying a forfeiture of its charter, and the appointment of receivers, and assigning the following reasons therefor:

1st. "That from an examination of its constitution and general laws, it abundantly appears that said Order is not in any respect a 'social organization,' and that so far as its charter authorizes and contemplates the organization and administration of a social corporation, the powers conferred upon it have not been used or exercised at all.

2nd. "That the said corporation, as shown by said constitution and general laws, is not organized for 'fraternal beneficial purposes,' and that in conducting the operations described in said constitution and general laws, it has been from the beginning and is now guilty of both abuser and misuser of its corporate functions, and is carrying on operations without due warrant of law.

3rd. "That the business carried on by said corporation is substantially in the nature of an insurance business, and is being conducted in violation of section 127 of Article 23 of the Code of Public General Laws of this State, title Corporations, and that so far from being operated for beneficial fraternal purposes, as authorized by its charter, its affairs are conducted with a view to profit by its officers and members.

4th. "That the scheme, as disclosed by its charter and general laws, and as practically administrated, is an endowment insurance on the assessment plan.

"Persons applying to be admitted as members are called on to pay: First, an admission fee, next, monthly dues to the several assemblies to which they respectively belong, and then from time to time assessments as the same are ordered, which are collected through the medium of the several assemblies, and transmitted to the Order to be applied to the payment of benefit certificate holders according to the plans detailed in the constitution and general laws.

5th. "That these certificates are practically and substantially policies of insurance, payable as the case may be, in the event of death or at the expiration of seven years, provided the holders shall not in the meantime have suffered the same to lapse and become forfeited by non-payment of monthly dues and assessments when the latter are called and payable.

6th. "That the business of the corporation is accordingly not a benevolent or beneficial one for fraternal purposes only, but is a speculative one, involving hazard, losses and profits, and conducted with great risk, many contingencies, and without any substantial beneficial feature in it, apart from the element of insurance upon the assessment plan.

7th. "It makes loans of its assets, and buys real estate, and in short carries on business transactions for the pecuniary profit of the Order, its officers and members.

8th. "That it altogether transcends the powers conferred upon it by its charter, and is exercising corporate functions not authorized by law."

On the 12th of September, 1892, the appellant filed its answer to said petition, substantially denying all its material allegations, and claiming that it had strictly complied with the requirements of the law, and fully recognized and discharged its obligations to the State.

The State then interposed a demurrer to the second and third paragraphs of the appellant's answer, and

joined issue on the fourth and fifth, so far as the same deny the allegations of the petition, and demurred to the same so far as they might be taken to aver new matter.

In this state of pleadings, the case was submitted for decree, and after argument, the Court, on January 9th, 1893, filed a decree annulling and vacating the charter of the appellant, and adjudging that all its corporate powers and franchises should cease and henceforth be void.

The large number of persons whose interests are involved, as well as the character and magnitude of those interests, have not failed to suggest to the Court, the exercise of patient examination and careful determination of the important question before us.

The defences which the appellant sets up are well summarized in the opinion of Judge WICKS in the Court below:

1. A denial that it is doing substantially or otherwise a life or endowment insurance business, and

2. That it is exempt from the operation of the law, because of its lodge system and its ritual.

He further pertinently remarks that, "if it, (the appellant) is not doing a life insurance business 'substantially or otherwise,' there is no necessity to invoke the aid of the Act in its behalf; but if it is, the question must then be considered as to how far this proviso can be relied upon to impart immunity to acts, which otherwise would be unlawful."

Sec. 127 of Art. 23 of the Code, so far as it affects this case, provides as follows: .

"Any person, body politic or corporate, partnership or association, who or which shall make, negotiate or solicit within this State any contract of insurance, whether of adult or infant, or by whatsoever title the same may be known, or shall effect an insurance or insurances * * * or shall do any business of insurance of any

kind, or make any guaranty, contract or pledge for the payment of annuities or *endowments*, or money, whether the amount thereof be fixed or contingent, to the families or representatives of any policy or certificate holder or the like; or shall advertise, or circulate any card, circular, notice, or open or keep any office for the transaction of said business, except an insurance broker duly licensed, without fully complying with all the provisions of this sub-title to this Article, shall be subject, &c. * * * And the term insurance company, as used in this Article, shall be taken to embrace every corporation, association, partnership or individual engaging in such business; and every such corporation, association, partnership or individual making any engagement for the payment of any money or other benefits in the event of sickness, accident or death or other contingency, either to the member, policy or certificate holder, or by whatsoever name the same may be known, or to their families or representatives, * * * shall be deemed and taken to be a life insurance company within the meaning of this Article, and shall be subject to all the requirements of law applicable to said life insurance companies. * * * Provided, also, that nothing herein contained shall be construed to apply to the granting of relief or benefits to members of their families by any societies of a purely or exclusively religious, charitable or benevolent description not operated with a view to a profit by its officers or members; *nor to orders or associations having ritualistic work and ceremonies in their lodges, councils or societies*: provided, also, that the business commonly known as industrial insurance, or on the weekly payment plan, shall not be permitted to operate under the guise of privileges of the Orders as exempted in this Article."

The "General Laws" of the appellant form part of the evidence in the record. Section one of Article 15, of

said laws provides that there shall be two distinct funds; "the benefit fund" and "the general fund." The former is divided into the reserve, sinking and claims funds; but the same shall be for the exclusive benefit of members of the Order, as hereinafter stated, and there shall be paid therefrom, "all sick, accident, endowment, death or disability claims, all bought or cancelled policies, legal expenses incurred directly in defending this fund from alleged fraudulent claims and attorney's hire and expenses in adding new members to the Order, also necessary fixtures as permanent assets." The benefit fund consists of the monthly payments made by the members, either of dues or assessments, and is required to be deposited in the corporation name of the appellant, and its securities also shall be so held. The "general fund" consists of "all receipts from entrance fees, sale of supplies, *per capita* tax, fines and other sundry fees.

Section one of Art. 15 of the General Laws says that, "the benefit plan of this order is known as the 'Golden Cycle Class,' in contra-distinction to the social or non-beneficial class, and pays benefits as follows:

A. A weekly benefit of $7.00 upon each certificate in case of sickness.

B. A death benefit of $80.00 per annum or *pro rata* thereon for an unexpired portion of the year.

C. A maturity (during life) benefit of $700.00 at the end of each 7 years, according to the illustration table hereinbefore set out.

Sec. 5 of Article 7 of the Constitution provides, that "The Cabinet shall appoint an actuary or accountant to make an estimate of the values of all certificates of membership at various periods of their age, and amounts of collections that may be deemed necessary for the fulfilment of all contracts or certificates of the Order, and order the collection thereof, so that the full sums shall be in the treasury upon the maturity of the same. The

said actuary shall also calculate and determine all dividends, accretions and distributions of funds in any class and the executive committee shall be empowered to enforce the same."

The cabinet of the Order is clothed with almost unlimited powers, and "shall before or after the election of officers, *enact, amend,* or *suspend* each of the general laws of the Order, as they may deem wise and prudent, and as best subserving the *interests, purposes, and plans* of the Order, and to attend to such other matters and the appointment of all necessary committees which shall be required in transaction of the business of the Order for the current year."

Sec. 7 of Art. 5 of its Constitution provides, that "the cabinet of the Order shall have the authority to properly compensate all officers and employés for services of any kind rendered the Order, and to make all other disbursements of every nature incidental to the transaction of the business of this Order, according to such rules as they may from time to time adopt." The Order also issues a small certificate known as the *"Junior"* for $250, payable at the end of seven years. This entitles the holder to $4 per week sick benefits, and in case of death his beneficiaries are entitled to a death benefit of $30 per annum. Costs. The assessments for the first year are $1.00 and thereafter 50 cents.

Any person between the ages of 17 and 67 may join the Order, except in the "Junior" Class, from which they are taken from the age of 12 years.

The general incorporation law of this State authorizes the formation of corporations for one or more purposes, but under section 42, Article 23 of the Code, sub-title "General Regulations," the third requisite set out in the certificate of incorporation is, that there shall be stated, *"the object or purposes for which incorporation is sought."* *Morawetz on Corporations, sec.* 27, declares the law to be

that "an association which has been authorized by its charter to act in a corporate capacity for the purpose of prosecuting a certain enterprise and that only, has no better right to act in a corporate capacity in the prosecution of another enterprise, than if it had never been chartered at all."

If, therefore, by the incorporation of the appellant, it was intended to conduct two or more different enterprises, the provisions of sec. 38, Article 23 of the Code should have been employed, which reads: "Any company may be incorporated for any two or more of the purposes aforesaid, when, in the judgment of those forming said company, the same may be conducted by one corporation with advantage to its general interests." A great deal of stress has been laid upon the idea that the "ritual and lodge" features of the appellant ought to rescue it from the assault now being made against it; but the lodge system and its ritual cannot be, under the law, incorporated with an insurance business such as is now conducted by the appellant, and called "a corporation for social or fraternal beneficial purposes or both," and thus frustrate the provisions of the insurance laws. Every corporation ought to have a name by which it is recognized, and the business in which it is engaged should be known to the public. This can be accomplished by a reasonable compliance with the obligations imposed upon it by the laws of the State. If the appellant had restricted itself to the declared purpose of its charter, and only utilized "the lodge system and its ritual,". there would have been no justification for this assault upon its business methods and against its charter. We are fully impressed with the importance of keeping a strict scrutiny upon all matters which relate to the business of insurance. It has grown to such magnitude that its ramifications penetrate to the hearthstone of almost every home in this State, humble though

it be.   It has, when properly conducted, earned and re-
ceived the encomiums of almost every Court in the
country.   But the business is of that character which
requires careful and prudent management, and therefore
it is that almost every State in the Union has sought to
provide proper safeguards for the protection of the in-
sured, and the regulation of the methods of the insurer.
This can only be done by bringing the insurance com-
panies under State supervision, and requiring them to
submit to State regulations under the provisions of law
which the legislative departments of the several States
have in their wisdom thought just and proper to provide.
In this case we have eight thousand interested parties,
doubtless many of whom are possessed of very limited
means, and three hundred thousand dollars of assets
under the control of a cabinet, whose powers we have
already characterized.   An examination of the docu-
mentary proof in the record, some of which we have
thought proper to insert in this opinion, clearly demon-
strates that the appellant has, as a leading and promi-
nent feature of its transactions, been and is now illegally
engaged in conducting an insurance business.   When
the case of *Goodman, et al. vs. Jedidjah Lodge, No.* 7, *&c.,*
67 *Md.,* 127, was before this Court, Mr. Justice MILLER,
delivering the opinion of the Court, said "But there is
another view that may be taken of the case, so far as the
'endowment sinking fund' is concerned.   In our opinion
in the former case we said that the endowment plan (the
adoption of which has given rise to the present litiga-
tion) was practically a system of mutual or co-operative
life insurance.   A re-examination of that plan has con-
vinced us of the soundness of this position.   Under it a
book of endowment certificates was furnished to each
subordinate lodge, and one of these certificates was issued
to each member; and it stipulated for the payment of
$1,000 upon his death to his widow and children, if he

left any, and if not, then to a beneficiary to be designated by him, whose name must appear in the body of the instrument. Such certificates differ in no substantial point from ordinary life insurance policies, issued by ordinary life insurance companies. The death dues and the contributions to the sinking fund are nothing more nor less than premiums exacted as in ordinary cases by the payment of which the policies are kept alive." Applying this doctrine to the case under consideration, we think either of the policies in the record, with the conditions thereon written and the restrictions contained in the "general laws" of the appellant regulating their meaning and controlling their effect, contemplate and create a system of insurance, which the appellant under its charter had no authority to adopt, and the use of which must not be further tolerated. The Court below in a very admirable and elaborate opinion has discussed all of the phases of this question. Speaking of a member insured, the Court says: "He has all the advantages of those who hold policies in the regular insurance companies, except that this Order pays but a small proportion at death, while the old line companies pay the full amount; but the amount promised to be paid in the event of living and keeping his policy alive is vastly more than the regular companies are able to return. When asked how this can be done we are told by 'lapses' and 'assessments.' The unfortunate members drop out, the others reap the benefit of what remains in the treasury of the Order.

"Whether this scheme can be successfully worked out when, after seven years have passed, the certificates mature, is not the inquiry. But, if it can, in what proper sense can it be called benevolent or beneficial, resting, as it must, for success upon the misfortune of its own members."

The law (section 127, Article 23 of the Code,) forbids "any person, body politic or corporate, partnership or

association, from effecting" or pretending to "effect an insurance or insurances," or from doing "any business of insurance of any kind, or making any guaranty, contract or pledge for the payment of annuities, or *endowments*, or money, whether the amount thereof be fixed or contingent." Nor can this be done by societies of a purely religious, charitable or benevolent character, for the relief or benefit of members of their own families, if it is also done with a view to the profit of its officers or members. But it would be profitless to pursue further the discussion of this question, as we regard it as clear beyond controversy that the appellant has assumed and is now engaged in the exercise of franchises and privileges not allowed by its certificate of incorporation, and is transacting and conducting an insurance business not by law allowed to be assumed or exercised by it. Whilst this is the conclusion we have reached, we are unable to give our assent to the destruction of the charter of the appellant. To strike down the charter would be to entail disaster upon a large number of persons, who could but illy afford to encounter such a result. Better far that the appellant be permitted to continue its existence, and resort to the appropriate jurisdiction, by which its insurance business may be adjusted and wound up, with as little costs and expenses as may be, and thereby reduce as much as possible, the loss which will inevitably ensue. The appellant can, by the course suggested, continue the exercise of its authorized powers as a "social or fraternal beneficial Order or both," or it may amend its charter under sections 17 and 38, of Article 23 of the Code, and bring itself within the provisions of the insurance laws of the State.

But it must now confine its operations within the legitimate scope of its undertaking, and carry out in good faith its declared purposes, otherwise it will become the duty of the law officers of the State under section 263,

Article 23 of the Code, to take such action in the prem-
ises as will restrain the appellant, its officers and agents
from further transacting an insurance business.

It follows from the views expressed, that the decree
of the Court below, forfeiting the charter of the appel-
lant and appointing receivers to wind up its affairs, must
be reversed.

In consequence of the unauthorized assumption and
illegal exercise of franchises not allowed by its charter,
the appellant must pay the costs below and upon this
appeal.

*Decree reversed ; appellant to pay*
*costs as stated.*

(Decided 21st June, 1893.)