JACOB DISHONG v. IOWA LIFE AND ENDOWMENT ASSO-CIATION, Appellant.

92  163·
114  275
92  163
129  657

Assumption OF MUTUAL INSURANCE ASSOCIATION'S LIABILITY. One company issued endowment policies before the act of 1886 prohibiting future issues of such. Another company, which has issued no such policies, assumes its liabilities. *Held,* the members of the latter are not liable to assessment to pay endowment policies assumed.

*Estoppel.* The fact that members of the association absorbed have paid death assessments for members of both associations, does not estop denying liability for endowment policies issued by the first.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

MONDAY, OCTOBER 15, 1894.

ACTION in equity to compel the defendant to collect and pay an assessment on two certificates of membership held by the plaintiff. There was a hearing on the merits, and a decree for the plaintiff. The defendant appeals.—*Reversed.*

*John F. & W. R. Lacey* for appellant.

*George W. Lafferty* and *Pound & Burr* for appellee.

Robinson, J.—In July, 1881, the Western Mutual Aid Society of Des Moines issued to the plaintiff a certificate of membership, and at the same time issued to his wife a similar one, which has been assigned to him. The society named was, at the time stated, and continued to be until after December 19, 1889, a corporation organized under the laws of this state, for purposes stated in its articles of incorporation as follows: "The object of this society is for the purpose of mutual benefit, by furnishing insurance upon the lives of its members upon the mutual assessment plan, for the benefit of their beneficiaries, at the actual cost thereof." The articles also provided that the society should have no capital or revenue excepting that derived from assessments of its members, and that no member should be liable for any fees, dues, or assessments not provided for in his certificate of membership. In transacting the business for which it was organized, the society issued two kinds of certificates. one of which provided for the payment to the beneficiary of the net proceeds of one full assessment, at schedule rates, not exceeding two thousand dollars, upon due proof of the death of the member to whom the certificate was issued. The other contained the same provision, and, in addition, another, which is in words as follows: "Endowment: And this society further agrees that when this certificate shall have been maintained in full force by the prompt payment, by the said member, on or before maturity, of all dues and assessments for a period of ten full consecutive years, this certificate may then mature as an endowment, if the member shall so elect, within ten days thereafter, in which case this society shall pay to the said member personally the net proceeds of a half assessment, at schedule rates, upon all contributing members at that date, and received at the Des Moines office, within

thirty days from the date of the notice of an assessment therefor, not exceeding the sum of one thousand dollars; provided, that, upon payment of that amount, this certificate shall be canceled and surrendered to this society." The certificates in suit contain the provision quoted. The defendant was organized as a corporation under the laws of this state prior to the year 1886, for purposes stated in its articles of incorporation as follows: "The general nature and business of this association shall be to do a life and endowment insurance business, under the mutual assessment and cooperative plan, for the purpose of insuring the lives of individuals, and accumulating and paying endowments; to receive applications and issue policies or certificates therein for life and endowment insurance under said plan; to make assessments for death losses, and collect annual dues; to adopt by-laws for the government of the association; to own personal property, and transfer the same; to own real estate, as permitted by the laws of Iowa, and incumber and transfer the same; accumulate endowment funds, and invest the same, as by the laws of Iowa provided; and to possess all the powers and perform all the acts that such mutual benefit cooperative endowment association can perform under the laws of Iowa." The articles further provided that money received on assessments made to meet death losses in excess of the percentage to be paid the beneficiary, together with the accumulated interest on losses, and all sums realized from lapses and reinstatements, should constitute an endowment fund. The certificate of membership issued by the defendant provided for the distribution of the endowment fund, but did not contain any provision for any endowment similar to that contained in the certificates in suit. In the year 1886, chapter 65 of the Acts of the Twenty-first General Assembly was enacted. That, in effect, prohibited such associations as the aid society and the

defendant from contracting to pay such endowments as those provided for in the certificates of the plaintiff. The defendant amended its articles of incorporation in 1886 to comply with the act, and, after that took effect, neither the aid society nor the defendant issued any certificates like those in question. In December, 1889, the aid society and the defendant entered into an agreement, a copy of which is as follows:

"This agreement, made and entered into this nineteenth day of December, 1889, between the Western Mutual Aid Society of Des Moines, Iowa, of the first part, and the Iowa Life and Endowment Association of Oskaloosa, Iowa, of the second part, witnesseth that, both of the said parties being corporations organized under the laws of the state of Iowa, that, for and in consideration of the covenants and agreements hereinafter stated, the said party of the first part doth hereby transfer to the said party of the second part all and singular the membership of the said party of the first part; and said party of the first part doth hereby reinsure the said members, and each of them, with the said party of the second part, as, and, in fact and in law, members of and in the said party of the second part; the said party of the second part being, by this transfer and reinsurance, authorized and empowered to make assessments upon said members to the same extent and for like purposes, and to collect and to receive the same and the annual dues of members upon the same terms as did the said party of the first part, and as said party had the right to do under the respective certificates of said members and the by-laws and rules of said party of the first part. In consideration of which the said party of the second part hereby accepts the transfer and assignment of the membership of the party of the first part, as above stated, and receives and reinsures them as members of good standing in the association of said party of the second part,

and doth hereby assume and bind itself to perform the covenants existing between the party of the first part and the said members, hereby transferred as evidence of their respective certificates of membership, as provided in the articles of incorporation of said party of the first part; and the said members shall be entitled to the same rights of action against said party of the second·part as they would have had against said party of the first part, to enforce any of their rights under their respective contracts of insurance, subject to the same defenses as the party of the first part could have made under their articles of incorporation. It being the intent and meaning of this contract that the said party of the second part shall take the place of said party of the first part in the contract between it and its present members, in good standing, and become the insurer of the said members in the association of the said party of the second part, under the same contracts held by said members from the party of the first part, and that the members of the Western Mutual Aid Society shall, by virtue af this contract, become and be members of the Iowa Life and Endowment Association, with all of their rights under their certificates of membership fully secured and preserved to them, and subject to all the duties and obligations of the party of the second part to which they are bound under their respective certificates of membership. It is hereby agreed that until noon on the fourth day of February, 1890, the Western Mutual Aid Society retains full control and direction of the business and membership of their society, and that at and on said date said society will deliver, and said Iowa Life and Endowment Association shall be entitled to and shall have full possession and control of the membership and business of the said Western Mutual Aid Society, with all the rights and liabilities existing between said society and its members, respectively, as fully to all intents and purposes as the

same now exists by virtue of the contracts as contained in the certificates of membership held by them respectively.

"WESTERN MUTUAL AID SOCIETY,

"By W. E. MILLER, President, and

"JOHN SHAFFER, Secretary.

"IOWA LIFE AND ENDOWMENT ASSOCIATION,

"By C. P. SEARLE, President of the Iowa Life and Endowment Association; CYRUS BEEDE, Secretary, and GEORGE K. WHITE, General Manager."

The plaintiff and his wife paid all assessments made after the agreement took effect, as well as those made before. The defendant, to pay endowments provided for by certificates like those of plaintiff, assessed only such of the former members of the aid society as held similar certificates, and made no assessments on members who held defendant's certificates. After the certificates in suit had been in force ten years, in July, 1891, the holders elected to have them mature as endowments. When the agreement for the transfer of the business of the aid society to the defendant was made, the former had about five hundred, and the latter about five hundred and fifty, members in good standing. In July, 1891, about ninety-seven of the former members of the aid society remained in good standing, of whom only a part held certificates like those in suit; and there were about six hundred and fifty members in good standing in both companies. Of those, many have become members of the defendant since the agreement of 1889 was entered into. The defendant made assessments upon the former members of the aid society who held endowment certificates to pay the certificates of plaintiff, but he demands that an assessment be made for one half schedule rates on all contributing members of the defendant who were such members when his certificates matured, to be collected

and paid on each certificate. The defendant claims that the contract made between it and the aid society, so far as it can be construed to require the payment of endowment certificates issued by the latter by assessments upon its own members, is unauthorized and void. The decree of the district court required the defendant to make a half assessment, at schedule rates, on all members who were contributing, at the date of the maturity of the certificates, for their payment. The prohibitory part of the act of 1886 did not apply to contracts of insurance made before it took effect. Those in suit provide for an assessment "upon all contributing members" of the aid society when the endowments shall mature. The terms of that provision are broad enough to include all contributing members at the maturity of the endowment, whether they hold endowment certificates or not. The certificates in suit provide that the society may classify its membership for purposes of assessment when it shall appear expedient, in which case members are to be assessed only to pay benefits in their own class; but it does not appear that a classification was ever made by the aid society.

It is claimed that the articles of incorporation of the aid society did not authorize it to issue endowment certificates, but we do not find it necessary to decide that question; and, for the purposes of this case, it may be conceded that such certificates were valid obligations of the aid society. The real question we are required to determine is whether, by the agreement of December, 1889, the members of the defendant became liable to pay assessments made to pay endowments provided for by the certificates of the aid society. The certificates which the defendant has issued are the agreements between it and its members, and fix the liability of the members, excepting as modified or otherwise affected by the articles of incorpora-

tion and by-laws of the defendant. But those contain
nothing which makes its members liable for such
assessments, nor do they in terms authorize its officers
to create such an obligation. After the act of 1886
took effect, the defendant could not have issued to new
members certificates providing for endowments like
those in question; nor could it then assume or create a
liability for such endowments on the part of any of its
members whose contracts of insurance did not in some
manner provide for it.

The agreement of 1889, so far as it relates to the
endowments in question, can only be performed on the
part of defendant through the medium of assessments.
It has no other source from which to obtain the neces-
sary funds. If valid as to its own members, it creates
a liability on their part for a kind of insurance in which
they have no interest, which they can not obtain, and
for which their contracts do not provide. The act of
1886 authorized the performance of valid contracts for
endowments already made, but prohibited the making
of new ones similar to those in suit. After it took effect,
the defendant could not have entered into contracts
giving to its own members the advantages of endow-
ment insurance like that in question; and there is less
reason for holding that it could impose upon them bur-
dens of such insurance for the sole benefit of others.
The practical operation of the contract, if it were to
have the effect contended for by the plaintiff, would be
to give to members of the aid society who hold endow-
ment certificates (said to be not more than eighteen in
number) all the advantages which accrue from both
death and endowment benefits, and the right to have
assessed for them the six hundred members of the de-
fendant who do not hold such certificates, while the
members last named have the right to assessments on
the holders of the endowment certificates for death ben-
efits only. To give the contract that effect would be

not only unauthorized, but would perpetrate a gross injustice.

It is said the defendant has had the benefits of the contract, and is now estopped to deny its validity. The benefits received by the members of the aid society appear to be as great as those they have conferred. They have paid assessments made on account of the death of members of the defendant, and the latter have paid assessments made on account of the death of members of the aid society. Members of that society have been required to pay more assessments for death benefits than they would have paid had the consolidation of the two corporations not been made, but the beneficiaries of their certificates are entitled to assessments from more members than they could have assessed if the consolidation had not been effected. The defendant has never recognized any liability to make the assessments demanded by the plaintiff, and its members have never paid such assessments, nor in any manner admitted liability for them. The plaintiff and his wife were chargeable with knowledge of the want of power in the defendant to make the assessments in question when they paid those which have been made upon them. We conclude that the defendant is not estopped to make the defense pleaded. Our attention has not been called to any case which is in all respects like this, although it is somewhat similar to that of *Twiss v. Association*, 87 Iowa, 733, 55 N. W. Rep. 8. See, also, *Rockhold v. Society*, 21 N. E. Rep. (Ill. Sup.) 794; *Kennan v. Rundle*, 51 N. W. Rep. (Wis.) 426. So far as the agreement in question seeks to place upon the defendant liability for the payment of the endowments provided for by the certificates in suit, it is unauthorized and void. The decree of the district court is REVERSED.