NATIONAL PROTECTIVE LEGION v. THOMAS D. O'BRIEN.[1]

July 19, 1907.

Nos. 15,283—(207).

**Beneficiary Association—Sale of Endowments.**
R. L. 1905, § 1594, defines beneficiary associations and prohibits the sale by them of endowments. It then defines fraternal beneficiary associations. R. L. 1905, § 1703, authorizes beneficiary and fraternal associations to make provision for (1) sick and disability benefits; (2) payment of funeral expenses; (3) death benefits. It is *held* that the two sections prohibit the sale of endowments by fraternal beneficiary associations.

**Same.**
A fraternal beneficiary association, executing a contract the substance of which was its agreement to pay dividends or "maturity benefits" to its living members not under disability, the incidents of which were to pay small disability benefits as a loan and an insignificant death benefit for a flat premium, is *held* to have been engaged to that extent in the sale of endowments and in a business prohibited by law.

Action in the district court for Ramsey county to restrain defendant from revoking or cancelling the license issued by him as insurance

[1] Reported in 112 N. W. 1050.

commissioner of the state of Minnesota to plaintiff to transact business in the state as a fraternal beneficiary association. Defendant demurred to the complaint. From an order, Bunn, J., sustaining the demurrer, plaintiff appealed. Affirmed.

*How, Butler & Mitchell,* for appellant.

*Edward T. Young,* Attorney General, and *Royal A. Stone,* Assistant Attorney General, for respondent.

JAGGARD, J.

This appeal, in a test case, is from an order sustaining a demurrer to the complaint. Plaintiff and appellant is a corporation organized under the laws of New York as a fraternal beneficiary association. For six years it had been annually licensed to transact business in Minnesota, and had been engaged in issuing the particular form of contract here in issue. The defendant and respondent, the insurance commissioner of the state of Minnesota, threatened to revoke the license because of the alleged illegality of that contract. No question of the financial condition of the company was involved. Plaintiff brought this proceeding to restrain defendant from revoking its license.

The first question presented by this appeal is whether the statutes prohibit fraternal beneficial associations from selling endowments. In our opinion sections 1594 and 1703, R. L. 1905, contain such prohibition. Section 1594 defines terms, and among other things provides:

> "Beneficiary association" shall mean a corporation, society or voluntary association organized and carried on for the sole benefit of its members and their families, relatives, or dependents, but not for profit, and insure the lives of its members only upon the whole life assessment plan, so called, and in which organization admission to membership, by a vote of the members or some governing body thereof, is a prerequisite to being entitled to such relief or policy of insurance and which association sells neither endowments nor annuities.
>
> "Fraternal beneficiary association" shall mean a corporation, society or voluntary association organized and carried on for the sole benefit of the members and their beneficiaries, but not for profit, and having a lodge system and ritualistic form of work and representative form of government.

Plaintiff argues that the prohibition against endowments or annuities expressly stated in the definition of ordinary benefit societies cannot be imported into the definition of fraternal societies, because each of these definitions was intended to be complete in itself, and that the expression of such a restriction in the case of ordinary mutual benefit or co-operative associations, and its absence in the case of fraternal societies, is itself enough to indicate that the legislature intended no such limitation of power in the case of the latter.

The natural and reasonable construction of this statute, however, is that beneficiary associations as a class are forbidden to write endowment insurance. Fraternal beneficiary associations are members of that class. The definition is per genus et differentiam. The prohibition, applying to the entire class, necessarily applies to a particular member of that class.

Section 1703 provides in effect that any beneficiary or fraternal association may make provision: (1) For the payment of benefits in case of sickness or temporary or permanent physical disability. (2) For payment of funeral expenses. (3) For death benefits. The expression of the legal purposes for which such an association as the plaintiff may make provision, which does not include endowments, inferentially excludes the right to write such contracts. "If the act under which a beneficiary association is incorporated provides only for payment in case of death, or for payments in case a member is disabled by sickness or other disability, such society is not authorized to conduct an insurance payable at the expiration of a fixed period; that being endowment insurance." Joyce, Ins. § 2518.

The two sections result in a clear and direct prohibition against selling endowments by such a corporation as the plaintiff. No other provision is inconsistent. No ambiguity or uncertainty exists which occasions or justifies any change of this interpretation because of other statutory provisions to which our attention has been called (see sections 1687, 1698–1704, 1706, 1710); nor because of the relevant legislative history (see section 3314, G. S. 1894; chapters 113 and 344, Laws 1899; chapters 276 and 296, Laws 1903). In consequence of the unequivocal significance of these two sections of the revised laws, the past conduct of the insurance commissioner in licensing this and similar corporations does not affect the construction here given. There is no claim that,

if this business was forbidden by the statutes, the plaintiff had acquired any vested right to do wrong.

The second question presented by the record is whether the contracts made by the society with its members violated these statutory provisions. It issued various forms of benefit certificates, the only one of which here objected to is known as "Class B" certificate. The benefits provided by this certificate were: (1) Disability and accident benefits; (2) death benefits; (3) maturity benefits—cash dividends out of the excess accumulations of the society, if any there be, not definite in amount, but contingent on there being any surplus out of which to pay them, as may be determined by the executive board in its discretion. Such dividend is subject to being reduced or extinguished by the amount of any disability or accident benefits previously paid a member. It is the third feature of this "Class B" certificate to which exception was taken by the commissioner.

(1) Plaintiff argues: The effect of this certificate is to provide for the return to the members of the payments made by them over and above the amount necessary to fulfil the obligations of the order. This is not in any sense an endowment contract. It is more properly what is known as a "participating policy." Many contracts of ordinary life insurance, which are not in any sense endowments, and which do not provide for the payment of any definite sum to a holder during his lifetime, contain provisions that at stated periods distribution of the surplus shall be apportioned by the governing board to the various policy holders. The concluding sentence of section 1703 is as follows: "Every such association may create and maintain a reserve fund for such purpose and shall be held to be an institution of public charity, and shall be exempt from payment of any taxes for state, county or municipal purposes, except that the real estate of such association shall be taxed as other real estate in the state of Minnesota." Under this provision this association may maintain a reserve fund, and therefore may properly make partial distributions from time to time of the surplus which it would be a wrong to the members of the association to retain and accumulate. No significance is to be attached to the fact that this society is not purely a benevolent or charitable institution, and that the statutory attempt to exempt such an association from taxation is void. The

certificate did not amount to a sale of an endowment. "An endowment policy is one that is to be paid at the expiration of a fixed term of years or at prior death." "A 'participating, policy' is one that is entitled to dividends, whether such dividends be paid yearly or at stated distribution periods." Johnson's Definitions of Life Insurance. And see State v. Federal Inv. Co., 48 Minn. 110, 50 N. W. 1028. The policy in question is similar to that issued by co-operative assessment companies. Haydel v. Mut. Reserve Fund Life Assn., 104 Fed. 718, 44 C. C. A. 169. There the policy provided that certain accumulated surplus funds should at stated periods be set apart to the policy holders whose rights were in issue, but might be paid on demand. This was held not to be an endowment policy.

(2) This, plaintiff's argument, is ingenious, but, we think, not sound. It is unnecessary to decide a number of these propositions, and in particular whether a fraternal beneficiary association might not, under some circumstances, distribute by way of dividends an equitable proportion of a reserve fund created in good faith. The principal question before us is the simple and narrow one: Did the plaintiff, under the guise of writing a "participating policy," undertake to sell endowments within the statutory inhibition? The evil thereby sought to be avoided by the statute is as familiar as the forms of its evasion are subtle and varied. It is accordingly to be anticipated that the business most profitable to the promoters of such an association, would not be labeled by the forbidden name, "endowment," but by some ambiguous euphemism. Here the term "maturity benefits" is used. It is to be anticipated under such circumstances that the real and prohibited business would be obscured by the protrusion of legitimate and authorized business. Here the first class, "A," seems proper and unobjectionable; the second, "B," is the matter in dispute. It is to be anticipated that the endowment feature would be presented under some plausible form of justification before the law. Here such benefits are classed as dividends of an equitable portion of the excess accumulation. It is to be anticipated that the plan would be worked out so as to make the speculative feature seem to be incidental only, but in fact absorb the bulk of the incoming funds. Here the mere excess of accumulation becomes the substance of the fund; payments on legitimate insurance, the shadow.

Counsel for the state has pointed out with substantial correctness how

insignificant and negligible are disability and life insurance benefits. The premium paid by all holders of class B certificates is $2 a month, or $24 a year. The maximum amount which can be paid for the most grievous disability is $175, and this in the form of a loan to be deducted from any death or maturity benefit. If the beneficiary dies during the last month, his beneficiary would receive but $295, and so the insurance would be reduced according as the time of death was more remote from the expiration of the five-year period. During the first month in the five-year period, the member is not insured at all; during the second month he is insured for the sum of $5 at a cost of $4; during the third month there is an insurance of $10 at a cost of $8; and so on. In other words, he is paying for his insurance on an annual premium basis at the rate of $400 for each $1,000. The insurance is of so slight importance that there is no graduation of premiums based upon the varying ages of the insured. The rates are the same for all ages. But, while a flat rate was thus charged to class B, a varying rate was charged to class A. Again, the insurance ceases when the member reaches the age of his life's expectancy. If he remain after that time, he remains for speculation only. Whether it be characterized as an endowment, dividend, or "maturity benefit," this money return is not a merely incidental distribution of excessive charges, but is the most prominent and most important element of the "Class B" certificate.

The trial court properly concluded that "an association that agrees to pay dividends or 'maturity benefits' to its living members who are not under disability is to that extent not doing a fraternal benefit business, and is not entitled to the consideration shown by our laws to beneficiaries and fraternal associations. It does not protect those who need protection, or benefit those who have lost the support of father, husband, or brother. It is a speculation or investment, the profits of which, if any there be, accrue to the member himself. If the plaintiff wishes to do that kind of business in this state, it must not masquerade as a fraternal beneficiary association."

The decisions, upon facts most nearly identical with those here presented, are in accord with the conclusion here reached. State v. Orear, 144 Mo. 157, 45 S. W. 1081; Calkins v. Bump, 120 Mich. 335, 79 N. W. 491; Chicago v. Hunt, 127 Ill. 257, 20 N. E. 55; Rockhold v. Canton, 129 Ill. 440, 21 N. E. 794, 2 L. R. A. 420; Order of In-

ternational Fraternal Alliance v. State, 77 Md. 547, 26 Atl. 1040. And see Dishong v. Iowa, 92 Iowa, 163, 60 N. W. 505; Cooley, Briefs Ins. 579; Bacon, Ben. Soc. & Life Ins. § 47.

Order affirmed.