(Decided January 4th, 1898).

---

## THE INTERNATIONAL FRATERNAL ALLIANCE *vs*. THE STATE OF MARYLAND.

*Benefit Societies — Life Insurance by Fraternal Association — Ex-
ceeding Powers—Forfeiture of Charter.*

Defendant was incorporated under *Code*, Art. 23, sec. 127, etc., for
social fraternal and beneficial purposes with a capital stock of $10,000,
and was reincorporated under the Act of 1894, chap. 295, as a fra-
ternal beneficiary association. Under *Code*, Art. 23, sec. 127, etc.,
no insurance could be issued by such a society for a greater sum
than $1,000 on any one life, and associations formed under the Act
of 1894 were required to have a representative form of government,
and be conducted not for profit, but for the sole benefit of the mem-
bers The defendant issued policies of insurance in excess of $1,000
on single lives, which it was not authorized to do as a fraternal society
and which only a regularly constituted insurance company was em-
powered to issue. The business of the defendant as a fraternal

benefit society under the Act of 1894, and its business as a benefit
insurance society with a capital stock were blended together and
the whole was conducted for the profit of the stockholders.   *Held*,
that the defendant had violated its charter by issuing policies in
excess of the amount authorized and also in attempting to evade the
law relating to fraternal societies and that its charter should be
forfeited.

The provision of *Code*, Art. 23, sec. 263, authorizing proceedings to
restrain a corporation from transacting any business not authorized
by its charter does not exclude other proceedings against a corpo-
ration for the abuse or misuse of its powers.

Appeal from an order of the Superior Court of Baltimore
City (RITCHIE, J.), by which it was "adjudged and ordered,
that the demurrer of the petitioner to the answer of the de-
fendant be, and the same is hereby sustained ; and the
Court being of the opinion that legal cause of forfeiture has
been shown, and that the public interests require that the
said forfeiture shall be declared, it is further adjudged,
ordered and decreed that the charter of the said Interna-
tional Fraternal Alliance of Baltimore City, the corporation
defendant in this suit, be and the same is hereby annulled
and vacated, and that all its corporate powers and franchises
shall cease and henceforth be void.   And the Court hereby
appoints George R. Gaither, Jr., and John P. Poe, receivers
of the estate and assets of said corporation defendant, who
shall be vested with all the estate and assets of every kind
belonging to said corporation from the time they qualify as
such by giving bond in the usual form in sum of fifty thou-
sand dollars.   And they shall be trustees for the benefit of
the creditors and stockholders of said corporation, and they
shall proceed to wind up its affairs under the direction of
this Court, and shall have all powers necessary for that
purpose."

The cause was argued before McSHERRY, C. J., BRYAN,
BRISCOE, PAGE and BOYD, JJ.

*John Prentiss Poe* (with whom was *Charles Marshall* and
*Charles L. Wilson* on the brief), for the appellant.

Submitted for the appellee on brief by *Harry M. Clabaugh, Attorney-General,* and *George R. Gaither, Jr.*

BOYD, J., delivered the opinion of the Court.

By direction of the Governor the Attorney-General instituted proceedings in the Superior Court of Baltimore City against the appellant, alleging that it had been guilty of abuse and misuse of its corporate powers and privileges.

The authority for this proceeding is given by Art. 23, sect. 255 of the Code, and the succeeding sections, to 262 inclusive, regulate the practice. The grounds relied on in the petition are in substance: (1). That the defendant, as shown by the by-laws, was not organized for "fraternal beneficial purposes," and that in conducting the operations described in its by-laws, it was guilty of both abuse and misuse of its corporate franchises, and is carrying on operations without due warrant of law. (2). That whilst purporting to be organized for "fraternal beneficial purposes" under the provisions of ch. 295 of the laws of 1894, it is organized with a capital of ten thousand dollars, and subject to the control and management of its stockholders, and although purporting to give representation to its certificate or policy-holders, under its by-laws, it subjects them to the will of the stockholders. (3). That the business carried on is substantially in the nature of insurance business, and it has issued a policy known as the "Golden Cycle Policy," which would mature in seven years, and the holders of which are subject to certain dues and assessments ; that in addition to the regular dues, the corporation has levied a "note assessment" of six hundred and fifty dollars upon each "maturing holder" in or about the last year of the maturing of the policy, and in the event of the notes not being given for such assessment, the policies would lapse: That the levying of such excessive assessments was a practical forfeiture of the policies, and an abuse and misuse of the charter powers. (4). That the defendant, though incorporated with a capital of ten thousand dollars, and hav-

ing deposited with the State Insurance Commissioner the sum of ten thousand dollars is issuing, or offering to issue, policies for more than one thousand dollars on any one life. (5). That it is pretending to operate under the scheme of a Fraternal Beneficial Society, as set out in ch. 295 of the laws of 1894, and at the same time is subject to the rights, privileges and control of its stockholders. (6). That purporting to carry on the business of a Fraternal Beneficial Society, it has issued policies of insurance, to the number of twentyfour hundred, to infants under ten years of age, which is contrary to the purposes of such societies. (7). That the business carried on by said corporation is substantially in the nature of an insurance business, and not within the scope of the scheme of Fraternal Beneficial Societies, and not in accordance with its charter rights.

The defendant filed an answer which denies that it has violated its charter, and gives a history of its organization. In June, 1888, a corporation was formed under the name of " The Order of the International Benevolent and Fraternal Company of Baltimore City," "for social, benevolent, fraternal and beneficial purposes," with a capital stock of five thousand dollars divided into one thousand shares of five dollars each.   In January, 1889, the charter was amended, whereby the stock feature was omitted, and the name changed to " The Order of the International Fraternal Alliance of Baltimore City," and in June, 1893, it was further amended by changing the name to " The International Fraternal Alliance of Baltimore City," and providing for a capital stock of ten thousand dollars, divided into one hundred shares of one hundred dollars each.   It is stated in these amended articles that the corporation was formed : " A. For social or fraternal beneficial purposes, or both," etc.   " B. To grant and issue insurance on the lives of individuals of both sexes, upon the mutual assessment or co-operative plan, as provided in section 127 of Article 23 of the Code of Public General Laws of the State of Maryland, and the other sections of said Article applicable to such mutual,

assessment or co-operative insurance," etc.    It is also authorized to provide in its by-laws for loans to its members, policy or certificate-holders, of any surplus accumulations, upon the building association plan, as defined in sections 95 to 124, inclusive, of Art. 23.    In November, 1895, the charter was further amended, and the defendant was operating under the articles as thus amended at the time these proceedings were instituted, and hence we are to determine whether or not they have been violated as charged, so far as we can from the answer, as the case was submitted on demurrer to the answer.

In the case in 77 Md. 547, against this corporation, this Court had before it the charter of January, 1889, and held that the appellant had no authority under that charter to carry on the insurance business.    The lower Court had ordered that its charter be forfeited, but this Court, although fully concurring with the Judge below, that the appellant had exceeded its powers, decided that it should be permitted to continue, and either resort to the appropriate jurisdiction to adjust and wind up its insurance business, or amend its charter under sec. 17 and 38 of Art. 23 of the Code, and bring itself within the provisions of the insurance laws of the State.    That case was decided on the 21st day of June, 1893, and five days afterwards the charter was amended by the articles of June, 1893, above referred to.    Ch. 295 of the laws of 1894, having been passed, another amendment to the charter was adopted in 1895, as above stated.    After the passage of the Act of 1894, some of the members of the appellant filed a bill alleging that it was insolvent, charging fraud in the management of its affairs, and claiming that the whole scheme of the corporation has been changed in violation of the rights of the complainants.    *Barton* v. *Fraternal Alliance,* 85 Md. 14.    In that case, we said " A corporation of this character is clearly within the terms of the Act of 1894 (chapter 295).    Its charter authorizes it to be and it is a fraternal beneficial association, operating on the Lodge system, and carried on for the sole benefit of its benefici-

aries." The relief prayed for was refused because under our construction of section 143 of chap. 295 of the laws of 1894, we were confined to the single question whether or not the corporation was insolvent, and that was not shown to be. It has thus been determined by this Court that this appellant could unite the insurance business with the original purposes of its charter by a proper amendment, and that the Act of 1894 was applicable to it.

Let us then see whether it has violated its charter in any of the particulars alleged in the petition. One of the most serious and important charges is that embodied in paragraph 7, wherein it is alleged that the appellant is unlawfully issuing policies for more than one thousand dollars on any one life. The answer admits that it had issued in all fifty-nine policies for amounts ranging from one thousand two hundred and fifty dollars to five thousand dollars, and that it still had in force thirty-one of them, but it denies that it is a violation of its charter. The charter as amended in 1895 provides for a corporation " for social or fraternal beneficial purposes, or both," and " to grant and issue insurance or benefits upon the lives of individuals of both sexes, as provided in section 127, Article 23 of the Code, and as provided in section 143 E," etc. The language used in stating the purposes of the organization, as to the social or fraternal beneficial feature, is the same as that in the charter of 1889, which was before this Court in 77 Md. It was distinctly held in that case that the appellant was not authorized to issue the policies then being considered, which were those in the " Golden Cycle Class," because it was thereby conducting an insurance business, which its charter did not empower it to do, and it would seem to follow as a necessary consequence of that decision that it cannot now, *under that branch of its charter*, issue policies either of the " Golden Cycle Class " or of the other classes in the record—the latter being clearly as much subject to the insurance law of the State as the former. Prior to the passage of ch. 295 of the Acts of 1894, the only

possible excuse for the appellants issuing any policies of insurance was by virtue of sec. 127 of Article 23 of the Code, "and the other sections of said article applicable to such mutual assessment or co-operative insurance," as its charter of 1893 expressly relied on them for such power. That section provided for imposing penalties on those who fail to comply with the insurance laws, defined what was to be deemed a life insurance company, within the meaning of Article 23, but provided that the business might be conducted on the mutual or co-operative plan on the terms therein set out. Sec. 128, as amended by ch. 488 of the Laws of 1892, provided " that organizations, as described in section 127, *other than fraternal orders* issuing certificates for the payment of money or other benefits in the event of sickness, accident or death, or other contingency, either to the member, policy or certificate holder," etc., *but issuing no certificates for the payment of a greater sum than one thousand dollars upon one life*, could be formed either on the mutual, co-operative, assessment or stock plan, and if on the latter, should have a paid up capital of at least ten thousand dollars, and required every such company to keep the sum of ten thousand dollars in money or securities with the Insurance Commissioner. The appellant fixed its capital stock at ten thousand dollars and alleges in its answer that it has deposited ten thousand dollars with the Insurance Commissioner, although we suppose from the connection, it meant to say that the deposit had been made under ch. 295 of the Act of 1894. Sec. 128 was further amended by chapter 256 of the Acts of 1894, and in that amendment it omits the words " other than fraternal orders," but continues the provisions as to stock, and requires all such companies, whether formed on the mutual, co-operative, assessment or stock plan, to keep ten thousand dollars on deposit with the Insurance Commissioner, and still limits the certificates to one thousand dollars upon any one life.

The amendment of 1895 provided for issuing insurance

or benefits upon the lives of individuals of both sexes, as
provided in section 127 and section 143 E, subject to the
supervision of, the making of reports and the payment of
fees to the Insurance Commissioner, under ch. 295 of the
Laws of 1894. Section 143 E does not provide for the
formation of corporations, but it does provide for the cor-
porations, etc., therein described continuing business under
the provisions governing fraternal beneficiary societies,
orders or associations, on the condition that each shall de-
posit the sum of ten thousand dollars in dividend-bearing
securities with the Insurance Commissioner as a guarantee
of the payment of certificates issued by it. The certificates
therein referred to are such as fraternal beneficiary associa-
tions issue and not insurance policies such as those in the
record are. The latter are of the character that co-opera-
tive assessment associations issue. This corporation could
not issue such policies of insurance *as a fraternal beneficiary
society*. It was decided in 77 Md. that it must become an
insurance company in order to do so, and the Act of 1894
did not aid it in that respect. It did become an insurance
company, and, although it amended its charter, and in
terms referred to section 143 E, etc., it cannot escape from
the requirements and limitations of the insurance laws by
such means. It is evident that the Legislature did not in-
tend by the provisions in section 143 E to authorize a cor-
poration to issue such policies as the Court had said could
only be issued by insurance companies, and if there were
any doubt on that question section 143 R ought to remove
it. It says that "any association entitled to do business in
this State under the provisions of section 143 E to section
143 R (both inclusive) of this article, which shall so con-
duct its affairs, or shall in any manner change its charter,
constitution or laws, so that it shall not answer to the de-
scription of a fraternal beneficiary association, as set forth
in section 143 E, shall thereupon cease to be entitled to
the privilege of said section." It cannot be said that a
corporation having a capital stock and issuing policies such

as these is then acting "for the sole benefit of its members and their beneficiaries, and not for profit" (the description of a fraternal beneficiary association set forth in section 143 E), and hence it cannot issue these policies under that section, and if it attempts to do so it ceases to be entitled to the privileges of it. When the appellant became an insurance company it made itself subject to all the provisions of Art. 23 applicable to life insurance companies, excepting so far as it brought itself within some of the exemptions. By section 116 every life insurance company incorporated under that article is required to have a guarantee capital of not less than one hundred thousand dollars to be invested in securities, which shall be deposited in the treasury of the State as a guarantee for the payment of the policies issued by it, and sections 112 and 136 provide that the capital stock, excepting mutual companies, shall not be less than one hundred thousand dollars. It was doubtless to avoid these requirements that section 127 was referred to in appellant's charter. Section 128, as we have seen, authorizes the formation of organizations as described in section 127, with a capital of ten thousand dollars, and a deposit of ten thousand dollars, but it is upon the express condition that no policy should issue upon any one life for more than one thousand dollars. The appellant is, therefore, not authorized to issue such policies as those in the record for more than that amount on any one life, and has violated its charter by doing so. Indeed, so far as we can gather from the answer, it would appear that only one sum of ten thousand dollars had been deposited with the Commissioner, and that under the Act of 1894, but as that is not clear, we have assumed for the purposes of the discussion, that it had made the deposit under the insurance branch of its charter as well as under the Act of 1894.

We do not deem it necessary to discuss at length the question which occupies considerable space in the very able brief of the appellant's attorneys, whether under our laws there can be a "double incorporation" for such purposes

as those named in the appellant's charter.   It is proper to
say that we do not understand, as contended in that brief,
that the learned Judge below decided that question in the
negative, but on the contrary, he did not pass on it.   He
did hold, however, and very properly so, "that where the
law attaches certain conditions and limitations to the exer-
cise of any given corporate purposes, those conditions and
limitations cannot be destroyed or subverted by combining
such purpose with some other under one corporation.   If
the two cannot be united in a joint prosecution, their admin-
istration must, at least, be kept separate.   The statute will
not permit the evasion or abrogation of prescribed requisites
and conditions by a scheme of combination."   So although
it may be that one corporation can, as a fraternal beneficiary
association, carry on certain parts of its business, " for the
sole benefit of its members and their beneficiaries and not
for profit," and can, as an insurance company, conduct
another part of its business for the benefit of its stockholders,
yet it is impossible that the business of two such classes
can be so blended as not to be separable, for if that be done
it can no longer be for the sole benefit of its members.   As-
suming that the appellant could issue certificates of the kind
contemplated in ch. 295 of Laws of 1894, for such sums as
it saw proper, it cannot issue insurance policies for any
amount under that law, and under the insurance law is lim-
ited to one thousand dollars.   If there be profits in the in-
surance business, are the stockholders exclusively, or all
the members to share in them ?   Undoubtedly the former
would be the case, unless there be some express provision
in the charter or by-laws to make it otherwise.   It is true
there are some by-laws of the appellant, which apparently
vest the control in the hands of the " members," to some
extent, at least, but there is in the book of the by-laws
adopted in 1896, a note which states that certain by-laws
'of 1895 are to remain in force.   Amongst them is Art. VII
of Part 2, which says, " The stockholders may at any spe-
cial or annual meeting exercise all or any of the powers

conferred upon this corporation by the Public General Laws of the State of Maryland, anything to the contrary in these by-laws notwithstanding," etc.   It is not necessary to enumerate the powers stockholders have under our general incorporation laws in corporations having capital stock. We find no provision in this chapter, or by-laws, requiring the members to be stockholders, and it would, of course, be impracticable, as there are only one hundred shares of stock. The " members," as they are called, are at the mercy of the stockholders, and the business is conducted for the pecuniary benefit of the latter, so far as we can see from the by-laws, and the conduct of the business, and notwithstanding the space given in the charter and the by-laws to the regulations and provisions of the social or fraternal features of the Alliance, the conclusion is irresistible that it is in reality a life insurance company, and is seeking to relieve itself of some of the burdens imposed on corporations of that character, for the protection of the public, by assuming the guise of a fraternal beneficiary society.   Its answer and Art. 6 of Part 2 of the by-laws, shows that it is engaged in issuing and offering policies to the amount of five thousand dollars, while it has no authority to issue them in a larger amount than one thousand dollars on any one life, even if it has made the deposit as required by sect. 128 of Article 23.

But it is urged in its behalf that it was innocent of any intentional violation of the law, and therefore its charter should not be forfeited.   This Court has previously been called upon to deal leniently with it, and although legal cause was shown for the forfeiture of its charter, yet being of opinion that the public interest did not then demand it, we permitted it to continue its existence.   But it would be going very far when we for the second time have found that it was exceeding its charter powers, to again grant it such indulgence.   That it has *abused and misused* its corporate powers by issuing policies in sums in excess of one thousand dollars we have no doubt.   It is true that section 263 of Art. 23 authorizes proceedings to restrain a corporation

from assuming or exercising any franchise, liberty or privilege, or transacting any business not allowed by the charter, but that does not exclude other proceedings, and in this instance, in the exercise of them, there have been both an abuse and misuse of its corporate powers by the appellant. When a company is authorized to insure under provisions that expressly limit the amount of the policies to be issued, and it deliberately exceeds that amount, it clearly abuses and misuses the powers vested in it. It is no longer safe to permit it to continue to exercise even the powers that were authorized. Nor can we doubt that there has been a deliberate attempt to evade the insurance laws of the State, and that, too, in one of its most important provisions. There are so many schemes to catch the unwary, and so many inducements offered to attract people, especially those of limited means, desirous of making some provision for those dependent upon them, that it is of the utmost importance that all corporations, organizations, and individuals that engage in life insurance, be made to understand that they must at least obey the laws of the State, and that no evasion of them will be tolerated. This is necessary for the protection of the public as well as those conducting their business in accordance with law.

It is not necessary that we should discuss the other grounds relied on by the State, as we are of opinion that those already referred to are sufficient to require us to affirm the order of the Court below.

*Order affirmed with costs.*

(Decided January 4th, 1898).