## ANOATUBBY v. PENNINGTON.

No. 4271.   Opinion Filed May 4, 1915.

(149 Pac. 828.)

1. **TRIAL—Objections and Exceptions—Duty of Stenographers.**
Section 1834, Rev. St. 1910, provides:  It shall be the duty of the county stenographer, under the direction of the county judge, to take down in shorthand the oral testimony of the witnesses, the rulings of the court, the objections made, and the exceptions taken during the trial of all civil and criminal cases, and also such other matters as the court shall order. Under this section, it is the duty of the stenographer, and, in case he refuses, it is the duty of the county court, to require him to take down all objections and exceptions, made by counsel in good faith, during the progress of the trial, and it is error for the court to refuse to do so.

2. **LANDLORD AND TENANT—Proof of Relation—Possession—Liability for Compensation.** Proof of the occupation of land by any person, other than the owner, is prima facie evidence of the relation of landlord and tenant, between the owner and the occupant, and any person having the possession of another's land, under the relation of landlord and tenant, is liable to the owner for a fair and reasonable compensation for such use and possession, for the time occupied, without special contract therefor.

3. **TRIAL—Demurrer to Evidence—Pleading.** Where there is any evidence introduced at the trial of a cause tending to establish the allegations of the plaintiff's petition, it is error for the court to sustain a demurrer to such evidence and render a judgment in favor of the defendant.

(Syllabus by Robberts, C.)

*Error from County Court, Marshall County;*

*O. P. Jones, Special Judge.*

Action by Ida Anoatubby, a minor, by her legal guardian, J. K. Warren, against A. C. Pennington. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

*Geo. E. Rider* and *E. S. Hurt,* for plaintiff in error.

*Albert W. Rison,* for defendant in error.

ROBBERTS, C. This case comes here from the county court of Marshall county. The facts show that in the month of August, 1911, the plaintiff in error, who was also plaintiff below, being a minor, filed her bill of particulars by her legal guardian against the defendant in error, also defendant below, before a justice of the peace, as follows:

"Comes now the plaintiff, Ida Anoatubby, a minor, by her legal guardian, J. K. Warren, and for cause of action against the defendant alleges: That A. C. Pennington is indebted to the minor plaintiff, Ida Anoatubby, for rents for the year 1911, on the lands allotted to said plaintiff, as a citizen of the full blood of the Chickasaw Nation of Indians, which said lands are in Marshall county, Okla., and that 45 acres of said land were planted in cotton by A. C. Pennington, and a crop of cotton grown thereon, and that the reasonable rental value of said cotton land is $150."

An attachment was issued, but it will not be necessary to consider it herein. The case was tried before a justice, and judgment rendered for the defendant. Thereupon the plaintiff appealed to the county court.

On the trial to the court and jury, in that court, after plaintiff had rested, defendant lodged a demurrer to the evidence, which was sustained by the court, and exceptions saved, and thereupon judgment was rendered against the plaintiff and in favor of the defendant. Plaintiff appeals to this court. For reversal the plaintiff presents two assignments of error, as follows:

"(1) The court erred in refusing to require the shorthand reporter (court stenographer) to take down all statements of counsel for defendant, and remarks of the court, after request that the same be taken down had been made by plaintiff.

"(2) It was error in the trial court to sustain the demurrer of the defendant to plaintiff's evidence, and to instruct the jury to return a verdict for the defendant."

On the first proposition, that the court refused to require the stenographer to take down statements of counsel for the plaintiff and the court during the trial of the case, we are clearly of the

opinion that it is the duty of the trial court to require the stenographer to take statements of both counsel and the court when requested, and it is error not to do so, when the matter is properly presented.

The contention of counsel that section 1786, Rev. Stat. 1910, is not applicable to procedure in the county court, may be true; but sections 1833 and 1834 are found in article 1, c. 21, entitled "County Court," and are especially applicable. These sections are as follows:

"The judge of the county court may appoint, in writing, whenever in his judgment it will expedite public business, a shorthand reporter, to be known as 'county stenographer,' who shall be *ex officio* deputy clerk of the county court, and who shall possess the same qualifications in the art of stenography as is required of such officer in the district court." Section 1833, art. 1, c. 21, Rev. Stat. 1910, Ann.

"It shall be the duty of the county stenographer, under the direction of the county judge, to take down in shorthand the oral testimony of witnesses, the rulings of the court, the objections made, and the exceptions taken during the trial of all civil and criminal cases, and also such other matters as the court shall order, and in all criminal cases to make out and file with the judge or clerk of the county court a transcript of his shorthand notes, when the same shall have been ordered by the court." Section 1834, art. 1, c. 21, Rev. Stat. 1910, Ann.

While the language in these sections may not appear to be quite ae broad and explicit as the provisions ·under the district court procedure (section 1786, Rev. Stat. 1910, Ann), it would seem, taking the entire statutes on that subject together, that it is the duty of the stenographer, and in case he refuses it is the duty of the county court, to require him to take down all objections and exceptions, made by counsel in good faith, during the progress of the trial. But, in order to save the question for presentation in this court, the objections and exceptions must be preserved in the record by bill of exceptions, or otherwise, and be clearly and definitely pointed out, in order that the appellate

court may fully understand the objections and exceptions taken. We are unable to find such exceptions in the record here, and for that reason cannot tell whether the rulings of the court in that particular were prejudicial to the rights of plaintiff or not.

The second assignment, that the court erred in sustaining the demurrer to plaintiff's evidence, and directing a verdict for defendant, is undoubtedly well taken and must be sustained. The question is: Was there any competent evidence presented for the consideration of the jury, reasonably tending to establish the allegations of the plaintiff's petition?

The evidence shows that the plaintiff, Ida Anoatubby, is a minor, about 16 years of age; that she is the owner of the land involved; that J. K. Warren is her legally appointed and acting guardian.

Warren testified that the defendant farmed about 50 acres of the plaintiff's land in the year 1911; that he raised about 50 acres of cotton and some oats on this land in that year. The plaintiff further testified:

"He (defendant) said he wanted to work the land. He said he was willing to pay the rent to whoever it was due to. He wanted to know about sowing some oats. He wanted to know where I wanted them sowed. I told him there was about 3 acres that had some Johnson grass on it, and told him to sow it down and pasture it down, and he said he would do so. He put in 45 or 50 acres of cotton. I think he said he measured the land. He had never paid any rent for the year 1911."

There is some evidence tending to show, and probably does show, that plaintiff commenced an action against one C. C. Johnson to dispossess him of this land for the year 1911. On that question the witness testified as follows:

"Q. I will ask you when you brought this suit in ejectment, that suit come up for trial in the district court, the one that the receiver was denied by the district court, I will ask you if any agreement was made between you and anybody else for the purpose of settling that question of the rental of the place? A. No,

sir.  Q.  You dismissed that suit then in the district court, Mr. Warren, because of the fact that Charlie Johnson agreed to recognize you as his landlord, didn't you?  A.  Well, I suppose that's why the cause was dismissed.  Q.  You know why you dismissed it, don't you?  A.  My attorney was attending to the business.  Q.  You know what was done?  A.  I know what was contended; they didn't do it, though, and that is why I brought the attachment suit.  Q.  Now, then, after you agreed to that order, after that, you recognized him under that agreement as your tenant?  A.  No, sir."

In further explanation of that suit, the witness testified, in substance, that after the order of the district court referred to above, he took a contract, in compliance with that order, to Johnson, and requested him to sign it, but he refused to do so.  He also testified that that order did not include all of the land in controversy.  Upon that, the witness says:

"Q.  You did bring suit against Johnson for all that Ida Anoatubby land, didn't you?  A.  No, sir; just for his part of it.  I recognized Pennington as my tenant; he was on my place.  Q.  Now, Mr. Warren, when you went to Mr. Johnson in pursuance to that judgment of the court, tell what took place between you; what did he do?  A.  He said he wouldn't sign a damn thing until he saw his lawyer.  Q.  Tell what effort you made after that.  A.  I went to Bro. Pennington, I had a copy of the court's order, and read it to him.  He said it was all right.  Mr. Pennington had been on my place five years, I believe, and I haven't had a written contract with him.  I went to Mrs. Lee and read the court's order.  She said it was all right.  I went to Mr. Johnson, and he asked me when his attorney done that.  I told him the day, I think.  He said he would not sign a —— thing until he saw his attorney.  He said bv ——, he had paid his money for the place, and, by ——, he was going to get it back."

The evidence in regard to the suit against Johnson, for the possession of the land, was undoubtedly introduced for the sole purpose of showing that he (Johnson) had assumed, or at least undertaken in some way, to pay the rent for the land for the year 1911; but there is no evidence that Warren, as the guardian, ever agreed to accept him for the payment.  At most, it is denied by Warrne, which leaves the evidence conflicting on that question.

Form No. 8

Again, the evidence shows, at least there is evidence tending to show, that Johnson refused to comply with the order of the court, and tacitly denied the authority of his attorney to consent to the order of the court in that particular. The testimony is so conflicting that it is difficult to see how any one can read it and and not hesitate and ponder, as to what the real facts were. The fact that counsel for both sides are able to make such strong and logical arguments as to the meaning and effect of the proof offered is convincing to any one, who reads their able briefs, that the evidence is not altogether one way, but, on the contrary, is conflicting.

"Where there is a material controverted question of fact, upon which reasonable minds might fairly come to different conclusions, it is error for the court to direct a verdict." *Lane v. Choctaw O. & G. R. R. Co.,* 19 Okla. 324, 91 Pac. 883.

"When there is any evidence introduced at the trial of a cause tending to establish the allegations of plaintiff's petition, it is error for the court to sustain a demurrer to such evidence and render judgment in favor of the defendant." *Cole v. M., K. & O. G. R. Co.,* 20 Okla. 227, 91 Pac. 540, 15 L. R. A. (N. S.) 268; *M., K. & T. v. Walker,* 27 Okla. 849, 113 Pac. 907.

The case should have been submitted to the jury upon the evidence offered, and it was error for the court to sustain the demurrer to the evidence and direct a verdict for the defendant. The question has been too often passed upon, and is too well settled in this court, to be even questioned, or to deserve further consideration. There is another question involved in this case, which, as we look at it, without further evidence or explanation, ought to have been submitted to the jury. It is admitted that the land belongs to plaintiff, and that the defendant, Pennington, had the use of the land and farmed it for the year 1911; also, that he has not paid the rent for that year. That, of itself, is *prima facie* evidence of the relation of landlord and tenant. We are not unmindful of the fact that there is an attempt on the part of the defendant to overcome that proof, but that, of itself, makes the evidence conflicting. The very fact of occupancy,

unexplained, creates a liability or obligation for the rent to any person entitled thereto.

Section 3802, Rev. Stat. 1910, Ann., is as follows:

"The occupant of any land, without special contract, shall be liable for the rent to any person entitled thereto."

In passing upon this section, this court has said:

"Under the provisions of this statute, the owner of the legal title to the land occupied by another during a particular year would have a right of action against such occupant for the rents of said lands for that year, without special contract." *Marshall v. Burden,* 25 Okla. 554, 106 Pac. 846.

The state of Arkansas has the same statute, and the Supreme Court of that state has construed the section to mean that any tenant having possession of another's land, under the relation of landlord and tenant, is liable for the rent for the time occupied without special contract. Under this construction of the law, it is immaterial, so far as the liability of the defendant was concerned, for the rental value of the land during the time of occupancy, whether there was a contract or not. The proof of occupation is *prima facie* evidence of the relation of landlord and tenant, which, under the statute, carries with it the presumption of the liability for the rent of the land, and these questions being disputed, and the testimony, at least to some extent, being conflicting in respect thereof, the case should have been submitted to the jury for determination.

We conclude therefore that this case should be reversed and remanded for a new trial and so recommend.

By the Court: It is so ordered.