## NAILL v. ORDER OF UNITED COMMERCIAL TRAVELERS of AMERICA.

No. 13549—Opinion Filed Oct. 7, 1924.

**1. Appeal and Error—Absence of Cross-Petition in Error—Right of Defendant in Error to Urge Error to Support Judgment.**

Where defendant files his motion to quash and set aside summons and service thereof, which motion is by the court overruled, and defendant saves an exception, and judgment is afterwards awarded defendant, from which judgment plaintiff appeals, and defendant files no cross-petition in error, he may notwithstanding attack erroneous rulings in order to sustain the judgment. the general rule being that the party not appealing will not be heard to urge for review errors committed against him in the trial court in order to modify in any manner a judgment in his favor, but on appeal may attack erroneous rulings of the trial court in order to sustain his judgment.

**2. Corporations — Process—Foreign Company "Doing Business in State."**

Where an association incorporates under the laws of another state, and one of its objects is "to establish funds to indemnify its members for disability or death resulting from accidental means; establishes branches or councils in this state, and such subordinate councils pass upon the physical as well as the mental and moral eligibility of all applicants for membership; initiates new members; receives from them the initiation fee." forwards 50 per centum thereof to the home office in another state, and retains 50 per centum for the subordinate council, such association is "doing business in this state" within the purview of section 5436, Comp. Stat. 1921, and where such foreign corporation has not designated an agent in this state upon whom summons or other process may be served so as to authorize personal judgment. service upon the Secretary of State is sufficient.

**3. Insurance—Foreign Fraternal Association—Compliance with Statute.**

Section 6774, Comp. Stat. 1921, regulating and describing fraternal beneficial associations, contains the following clauses—"Such (fraternal beneficial) associations shall be governed by this article (art. 3, chap. 38, Rev. Laws 1910) and shall be exempt from the provisions of the insurance laws of this state except as provided in this article and

no law shall apply to them unless they be expressly designated therein." Held, the exemption does not apply to a foreign corporation doing business in this state, that fails to comply with section 6775, Comp. Stat. 1921, requiring such association to submit annual reports to the insurance commissioner and designating the insurance commissioner as the person upon whom process may be served.

**4. Same—Death of Insured at Hands of Burglar or Robber—Proof.**

Where action is brought on an insurance policy containing the exception "that benefits for disability or death should not by the terms of said contract cover or extend to murder or to injuries (fatal or otherwise) intentionally inflicted by others (except when such injuries are inflicted for the sole purpose of burglary or robbery * * * the intent to commit burglary or robbery to be established by the claimant) and evidence discloses the insured was shot and killed on a dark stormy night within six blocks of the business district of a town, it is competent to prove numerous burglaries and robberies had occurred just prior to the killing of deceased and that inhabitants of said town were so terrorized, prior to and up until the time of the killing of the assured, that the inhabitants walked in the center of the roadway when traveling after dark to avoid foot pads or hi-jackers, as a circumstance tending to supply motive, where the perpetrator of the crime is unknown and deceased was of a quiet disposition and without known enemies.

**5. Same—Circumstantial Evidence — Sufficiency for Jury.**

Where no known motive is disclosed for the killing of the assured by direct evidence as to motive, circumstantial evidence may be introduced tending to supply motive, and the jury are the judges of the facts and circumstances and it was error for the court to sustain a demurrer to the plaintiffs evidence and enter judgment for the defendant.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Grady County; Will Linn, Judge.

Action by Katherine L. Naill against the Order of United Commercial Travelers of America. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

M. D. Libby, for plaintiff in error.

Keaton, Wells & Johnston, John A. Millener, and Bond, Melton & Melton, for defendants in error.

Opinion by RUTH, C. This action was filed in the district court of Grady county, by plaintiff in error, wherein she sought to recover judgment against the defendant upon a policy of insurance issued by defendant, and for convenience the parties will be designated as they appeared in the court below.

The plaintiff alleges in her petition that she was the wife of the assured and beneficiary named in an insurance policy issued by the defendant corporation, and:

"That in and by the terms of the said contract the said defendant insured the said James H. Naill against disability or death resulting from bodily injury effected through external, violent, and accidental means alone and independent of all other causes except that benefits for disability or death should not by the terms of said contract cover or extend to injuries (fatal or otherwise) intentionally inflicted by other (except where such injuries are inflicted for sole purpose of burglary or robbery) * * * the intent to commit burglary or robbery to be established by the claimant.

"That on the 4th day of March, 1915, and while the said contract was still in force the said James H. Naill departed this life.

"That his death resulted from bodily injury effected through external, violent, and accidental means alone and independent of all other causes; that is to say, from a gunshot wound in the head, from which he instantly died, which fatal injury was inflicted upon him, the said James H. Naill, by some other person who is unknown to this plaintiff and who has never been apprehended on criminal process, and was so inflicted by such other person for the sole purpose of burglary or robbery and was not the result of misconduct or provocation by the said James H. Naill, and was by him unforeseen and unintentional."

Plaintiff further alleges proper notice of death was filed and her claim "disallowed" because said death resulted from murder, and prays judgment.

Defendant filed its "motion to quash summons as to defendant" "for that it is a nonresident company, and is a citizen of the city of Columbus, Ohio, and is not doing business within the state of Oklahoma, and has no agent for service therein, nor is anyone in the state of Oklahoma authorized to accept service of summons for said defendant." Thereafter the court heard the said motion and finding "no affidavits or other evidence being offered in support of said motion, that the same should be overruled," and it was so ordered.

Defendant thereupon filed a general demurrer, the record being silent as to what disposition was made of the demurrer. The

defendant filed its answer, wherein it again pleaded lack of jurisdiction for want of legal service of summons, admits its corporate identity; the issuance of the policy, etc., and for defense says the claim was disallowed "for the reason that said death resulted from murder and from injuries by others intentionally inflicted, and that said death was not inflicted for the sole purpose of burglary or robbery, and for the reason that said death resulted from causes excepted in the provision of said policy, and the payments provided for in said policy were not payable to plaintiff under the provisions and terms of said contract," and further pleads the statute of limitations.

After reply filed a jury was duly impaneled and sworn, testimony introduced, and plaintiff rested, whereupon the defendant filed its demurrer in the following words:

"The defendant at this time, not waiving its plea to the jurisdiction of this court, but especially insisting in the same, files its demurrer to the evidence offered on behalf of the plaintiff, and for such demurrer says that the evidence offered by plaintiff, if true, is wholly insufficient in law to entitle the plaintiff to recover in this action upon the contract herein sued upon."

The court sustained the demurrer upon the ground that "plaintiff had alleged the injuries were intentionally inflicted for the sole purpose of burglary or robbery," and discharged the jury and rendered judgment for the defendant. Plaintiff excepted, filed her motion for a new trial, which was by the court overruled, and this cause is brought here regularly for review upon appeal, petition in error, and case-made.

Plaintiff in her petition in error assigned but three specifications of error, as follows, to wit: First, in overruling the motion of plaintiff for a new trial; second, in excluding certain evidence offered by plaintiff, and sustaining objections thereto by defendant; third, in sustaining defendant's demurrer to the evidence, withdrawing the case from the jury and in giving judgment in favor of the defendant and against the plaintiff for costs.

Defendant having duly filed its motion to quash the summons for the reasons hereinbefore set forth, it will be necessary to consider this question before reviewing the assignments of error urged by the plaintiff.

Plaintiff insists that as the defendant answered: went to trial: demurred to the plaintiff's evidence, which demurrer was sustained, and failed to file a motion for a new trial, and follow the same by a cross-appeal,

it cannot question the correctness of the court's ruling on the motion to quash summons.

The last expression of this court on the question raised will be found in Muskogee Refining Co. v. Waters-Pierce Oil Co., 89 Okla. 279, 215 Pac. 766, where the court held:

"The general rule is the party not appealing will not be heard to urge for review errors committed against him in the trial court in order to modify in any manner a judgment in his favor, but said party on appeal, may attack erroneous rulings of the trial court, in order to sustain his judgment."

The court cited with approval St. Charles Sav. Bank v. Denker, 275 Mo. 607, 205 S. W. 208, where in the body of the opinion it is said:

"The cases which announce the well-established rule that a party not appealing will not be heard in this court to urge a review of errors committed against such party in the trial court are always where the respondent seeks some affirmative relief in the appellate court. A respondent cannot have the advantage of errors committed by the trial court for the purpose of modifying in any manner the judgment in his favor. But it is generally held that the respondent on appeal may attack the rulings of the trial court which are erroneous, for the purpose of sustaining his judgment. The following authorities support the principle here announced: Ford v. Dilley, 174 Iowa. 243, 156 N. W. 516: Taylor v. Independent School District 181 Iowa. 544, 156 N. W. 879; State v. Con. Ind. School Dist., 188 Iowa. 959, 176 N. W. 976; Mendota Club v. Anderson. 101 Wis. 479, 78 N W. 185: Fleming v. Northern Tissue Paper Mill, 135 Wis. 157, 114 N. W. 841, 15 L. R. A. (N. S.) 701-710: Miller v. Brooks, 120 Ga. 232, 47 S. E. 646; Harris v. Harris. 153 Mass. 439, 26 N. E 1117; Landran v. Jordan, 203 U. S. 56, 27 Sup. Ct 17, 15 L. Ed. 88; Huntington v. Love, 56 Wash. 674, 106 Pac. 185."

It appears from the record the defendant is a corporation organized under the laws of the state of Ohio, and has for its purpose the insuring of persons against disability or death resulting from bodily injury effected through external, violent, and accidental means alone, and independent of all other causes except that benefits for disability or death should not by the terms of the insurance contract cover or extend to injuries (fatal or otherwise) intentionally inflicted by others, except where such injuries are inflicted for the sole purpose of burglary or robbery, or by an insane person, etc.

After this action was filed, summons was issued and served upon the Secretary of

State of Oklahoma, who directed a letter containing the summons to "United Commercial Travelers, Cleveland, Ohio," and this summons fell into the hands of one Charles A. Johnston, who files an affidavit to the effect that he is not a supreme officer of the said association nor an executive officer of the supreme council of the association.

Walter D. Murphy filed his affidavit wherein he states he is the supreme secretary of the defendant association, and further states Charles A. Johnson, to whom the summons was delivered, has no authority to accept service in behalf of the defendant; that defendant has no paid agents, servants, adjusters, or officers in the state of Oklahoma; that it has never had or maintained any office or agent for the transaction of business in the state of Oklahoma; that defendant's main office is in Columbus, Ohio, and the defendant has never designated any one in the state of Oklahoma as attorney upon whom service could be made.

The object of the Secretary of State in mailing a summons served on him to the defendant corporation is to advise the defendant it has been sued in this state, and it is unimportant that the envelope containing the summons was first opened by one not an officer, or one not authorized to accept service. It is assumed that any business institution doing the volume of business the defendant was doing does not require the president or secretary to personally open all mail but this duty is generally delegated to a mail clerk, or other clerk, and the wholly ex parte statement of Johnson fails to state whether or not his duties, if any, includes the opening of defendant's mail.

This object of the law is to get the summons in the proper hands, and this appears to have been accomplished, as the supreme secretary files his affidavit attacking his service, and the defendant comes into court by its attorneys; files all necessary papers: conducts the trial; prepares and files its brief over the names of six eminent attorneys of this state, and there is no doubt the summons reached the destination intended by the Secretary of State.

Section 1339, Rev. Laws 1910 (sec. 5436, Comp. Stat. 1921), provides:

"In all cases where a cause of action shall accrue to a resident or citizen of the state of Oklahoma, by reason of any contract with a foreign corporation doing business in this state, or where any liability on the part of such foreign corporation shall accrue in favor of any citizen or resident of this state, whether in tort or otherwise, and such foreign corporation has not designated an agent in this state upon whom process may be served, or has not an officer continuously residing in this state, upon whom summons or other process may be served, so as to authorize a personal judgment, service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject-matter, whether sitting in the county where the Secretary of State is served or elsewhere in the state."

Defendant admits it has not designated an agent in this state upon whom process may be served, or has not an officer continuously residing in this state, upon whom summons or other process may be served.

Section 5442, Comp. Stat. 1921, provides:

"Corporation's Noncompliance with Law— Venue—Process. Any foreign corporation, doing business in the state of Oklahoma, having failed either to appoint an agent, upon whom service of summons or other process may be had, or failed to file in the office of the Secretary of State a duly authenticated copy of its articles of incorporation or charter. or having failed to pay the license fee as required by law, then in the event of said foreign corporation having failed to comply with any of the provisions of the law as above referred to, any person now or hereafter having any cause of action against any foreign corporation may file suit against said foreign corporation in any county in the state and service of summons or any process upon the Secretary of State shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject-matter."

By virtue of the sections above set forth, in case of a foreign corporation "doing business in this state," which has not appointed an agent upon whom service of summons may be made, summons served upon the Secretary of State is a valid summons. The reason for such statutes is very cogently stated in Corbett v. Physicians Casualty Ass'n (Wis.) 115 N. W. 365, where the court in dealing with a similar statute said:

"The dominant purpose of such a statute is to protect residents of the state from being imposed upon by foreign insurance companies. In case any such company offers to do business with one within such protection, it holds itself out as having qualified to do such business, and the resident in the absence of knowledge, actual or constructive. to the contrary, may safely act upon the faith thereof."

Defendant contended it was "not doing business in this state." Henry Hicks testifies "he is a charter member of subordinate council No. 220, El Reno, Okla., of the United Commercial Travelers of America (defendant herein), and is a member of the

grand executive committee of the Grand Council of the state of Oklahoma; that the Order has 14 subordinate councils in this state with approximately 1,300 members; that the subordinate council solicits membership in the order; passes upon the eligibility and qualifications of candidates and initiates them; the officers of the subordinate council collects dues and indemnity assessments from the assured member, and remit a portion, to wit, the indemnity assessment, to the supreme council and retains the balance for the subordinate council; that whenever any act is required to be done by the subordinate council in behalf of the supreme council, that act is done by the subordinate council."

Article 1, sec. 3, of the constitution of the defendant corporation provides:

"For the purpose of administering the business and fraternal affairs of the order there shall be established and maintained, a supreme council and also grand councils and subordinate councils with such powers, rights, privileges, duties, and obligations, as are herein provided for and as may from time to time be provided."

The subordinate council of El Reno, of which the deceased was a member, was by the constitution and laws of the defendant corporation, constituted an "agent" of the corporation to solicit members, pass upon their qualifications, accept them into membership, take their money, transmit a portion thereof to the home office, and retain a portion within and for the benefit of the El Reno agency.

Section 3, of art. 4 of the constitution provides for an initial payment of $10 by the applicant for his insurance, $5 of which sum is forwarded to the home office, and $5 retained by the soliciting agency, called the subordinate council.

The case of Minnesota Commercial Men's Ass'n v. Benn, 261 U. S. 140, 67 L. Ed. 573, and the line of cases cited by defendant are clearly not in point, and are not persuasive upon this court. In the Benn Case, it appears the Minnesota Commercial Men's Ass'n had its offices in Minnesota; application blanks were mailed direct to the applicant; when he signed the same, he mailed it to the home office in Minnesota together with his initial payment, and the home office and it alone passed upon the applicants eligibility or qualifications. and mailed him his certificate of insurance direct. All notices of dues and assessments were mailed direct to members from the home office in Minneapolis, Minn., and dues and assessments were paid direct-

ly to the home office by the insured, and not through any local agency, and the court in the Benn Case very properly held, the company was not doing such business in Montana. where the action was originally filed, as would give the Montana court jurisdiction where summons was served upon the Montana Secretary of State.

We think the evidence in the case at bar establishes the fact that the defendant was 'doing business in Oklahoma." The mere fact that the insurance policy or contract of insurance was signed in Ohio, and forwarded to Oklahoma is of little legal consequence, and the defendant's contention in this behalf is wholly without merit.

It is further contended that the defendant is a "fraternal order." and as such is exempt from the provisions of the insurance laws of this state.

Section 6774, Comp. Stat. 1921, provides:

"Regulations and description. A fraternal beneficiary association is a corporation, society or voluntary association formed or organized and carried on for the benefit of its members and their beneficiaries and not for profit. Each association shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provision for the payment of benefits in case of death and may make provision for the payments of benefits in case of sickness, temporary or permanent physical disability, either as a result of disease, accident, etc. * * *. Such association shall be governed by this article (article 3 of chapter 38, Revvised Laws of Oklahoma of 1910), and shall be exempt from the provisions of the insurance laws of this state except as provided in this article, and no law shall apply to them unless they be expressly designated therein."

The laws of Oklahoma relative to fraternal orders carrying insurance features were enacted primarily for the protection of all fraternally insured persons, who, recognizing the manifold blessings inevitably flowing to all who recognizing the illimitable resources of this state. "looked over the valley of the Jordan and said, It is a goodly land," and came to abide among us, and our laws were not made for the benefit of any organization which. for a great number of years, conducted business in this state flouted, and set at defiance all our laws, collected thousands of dollars from our citizens in initial insurance premiums which sum it split fifty-fifty with its local agency, the subordinate council, and in addition thereto collected large sums in quarterly dues and assessments, which it divided with such local agency.

Section 3, art. 19, Constitution of Oklahoma, provides:

"The revenue and tax provisions of this Constitution shall not include, but the state shall provide for, the following classes of insurance organizations not conducted for profit, and insuring only their own members: First, farm companies insuring farm property and products thereon; second, trades insurance companies insuring the property and interest of one line of business; third, fraternal life, health and accident insurance in fraternal and civic orders, and in all of which the interests of the members of each respectively shall be uniform and mutual."

In Modern Order of Praetorians v. Bloom, 69 Okla. 219, 171 Pac. 918, this court said:

"Whatever construction may otherwise be placed on article 19, sec. 3, of the state Constitution, it is clear that there must be a certain mutuality and uniformity in fraternal beneficial certificates."

The Constitution makes the classification, and the right to further classification by the fraternity is usually denied. Thomas v. Schilles, 16 Barb. (N. Y.) 491; Walker v. Giddings, 103 Mich. 334, 61 N. W. 512: National Protective Legion v. O'Brien, 102 Minn. 15, 112 N. W. 1050. The word "mutual" in this connection denotes a common interest. Robinson v. Wolf, 27 Ind. App. 683, 62 N. E. 74. Uniformity has been said to indicate sameness, a conformity to one pattern. McConilee v. State, 17 Fla. 238; Town v. State, 29 Fla. 128. Does then this mutuality and uniformity exist in the defendant order?

In its articles of incorporation we are confronted at the outset with the statement that the object of the corporation is: First: To unite fraternally all commercial travelers of good moral standing; third, to establish funds to indemnify its members for disability or death resulting from accidental means; fourth, to secure from transportation companies and hotels just and equitable favors for commercial travelers as a class; fifth, to elevate the moral and social standing of its members. Its constitution then provides who shall be eligible, and he is placed in a definite class. It further provides that if he changes his occupation to the honorable one of farming down through every known trade or occupation, including the "morally elevating" one of saloon-keeper or bartender, he is placed in another class, and his benefits reduced five percentum, without a corresponding reduction in his "dues" or premiums. It cannot then be said that he has the same mutual interest, or that the uniformity the constitution requires exists as to this class.

Class "B" by the constitution of the defendant order, among other persons, includes men with one arm, one leg or one eye. There appears to be no reduction from the $10 initiation fee, nor any difference in the "dues" or premiums paid, yet he receives but 50 per cent. of the disability or death indemnity of his more fortunate brother, and if you knock out the one eyed brother's other eye, you also knock out his indemnity certificate, as it is immediately canceled and the brother is left helpless.

The same provision is made for the one-armed or one-legged brother when he loses the other member. From the above we fail to find the mutuality of interest and uniformity of benefits contemplated by the Constitution and laws of this state. Section 6774, Comp. Stat. 1921, defines a fraternal beneficial association as a "corporation, society or voluntary association formed or organized and carried on for the benefit of its members and their beneficiaries, and not for profit," and further provides:

"The term 'fraternal beneficiary association,' wherever used in any law of this state, shall be construed to mean an association such as is defined by this section. Such association shall be governed by this article (article 3 of chapter 38, Rev. Laws of Oklahoma 1910), and shall be exempt from the provisions of the insurance laws of this state, except as provided in this article, and no law shall apply to them unless they be expressly designated therein."

Section 6775, Comp. Stat. 1921, provides:

"All such associations coming within the description set forth in the preceding section, organized under the laws of this state, or the laws of any other state, province or territory, and doing business within this state, may continue such business, Provided they hereafter comply with the provisions of this article regulating annual reports to the Insurance Commissioner and the designation of the Insurance Commissioner as the person upon whom process may be served as hereinafter provided."

It is manifest the lawmaking power intended to throw the protecting arm of the law, through the exemption clause of section 6774 around those fraternal societies complying with the provisions of section 6775. Defendant admits it never did comply with or make any effort to comply with the provisions of section 6775 prior to the institution of this action, notwithstanding the section has been in force since 1901, and is therefore outside the pale of its exemption provisions. Defendant states in its "response to reply brief" of plaintiff in error that it did comply with the laws of this state seven years after the death of Naill,

the assured, and two months prior to the lodging of the appeal in this court, but such belated compliance availeth naught in the case at bar. Defendant inveighs sharply against being called to answer in the courts of this state, and says, "Just because defendant did not think it proper and desirable to appoint the Insurance Commissioner as agent for service, or to comply with the statutory law of this state, this is certainly not any reason why it must pay every claim upon which suit is brought." True it is, defendant may proceed in utter disregard of the laws of this state, but not with impunity, and one of the penalties imposed is to make it answerable in the courts of this state in any action properly brought.

Again defendant says: "It is certainly not a crime for an individual or an association to say 'if you bring suit against me, come to my place of residence and bring your contest'." If the defendant had had such a declaration in bold type on the insurance certificates, it is problematical if it would have secured 1,300 members in this state, if they knew widows or beneficiaries would be put to the expense of taking witnesses to Columbus, O., to establish their claims in the courts of that state. It is, therefore, upon consideration of the whole record, the opinion of the court that the service complained of was sufficient, and the court committed no error in overruling defendant's motion to quash summons and service thereof.

Plaintiff assigns as error the action of the court in sustaining defendant's demurrer, and dismissing the jury, and rendering judgment for defendant, and it will be necessary to examine the evidence to determine the question. The testimony introduced by the plaintiff was to the effect that the Naill home faced east, and the long way of the lot was east and west. On the west end was an alley, the lot was on the corner, the house being erected on the east end of the lot and a barn on the west or alley end; that a cement sidewalk extended along the street south of the lot for the full length thereof to where it intersected the alley at the west end on the barn; that a small lattice fence about six feet high, covered with vines, extended north and south at the rear of the house, separating the house and lawn from the backyard and the barn; that there was a door on the south side of the house near the rear thereof, and a tree growing on the parking near the steps leading to the south door; the library was east of the living room. The night of the tragedy (March 4, 1915) was dark, stormy, cold and muddy.

Mrs. Naill, a woman 60 years of age, at the time of the trial, testified as to the location of the house, fence, barn and doors to the east and south of the house; that she was plaintiff; had been married to the deceased 35 years; that on the night James H. Naill was killed, witness was sitting in the library of the house along with a Miss Cook, who roomed at the house, and witness was waiting for her husband; witness could recognize the footsteps of her husband on account of a certain deformity causing him to walk on the ball of one foot and the heel of the other foot; that she heard his footsteps on the cement sidewalk along the street south of the house and exclaimed to Miss Cook, "There comes Mr. Nail now"; that from the direction of the lattice fense she heard a rumbling or mumbling voice she did not recognize, and heard Mr. Naill in a loud voice say, "What do you want! What do you want!" That immediately she heard a pistol shot; that she opened the door and screamed for Dr. Koons, who lived across the street; that they found Mr. Naill's dead body partly behind the tree on the lawn or parking, head facing the house, and about 18 or 20 feet from where she and Miss Cook were sitting in the library. That Mr. Naill was dead with a bullet hole in his head; that she did not see Mr. Naill before the shot; that a light was burning in the library, but the curtains or shades were tightly drawn. The evidence further tended to prove the deceased was engaged in the hardware business, had no known enemies; was not a party to any feud, had no financial difficulties; was peaceful and quiet, home-loving, and of kindly disposition.

Fred A Gillette, an attorney-at-law, called for plaintiff, testified as follows: He lived close to the Naill home; that during February and March, 1915, there had been an "epidemic" of robbers, holdups and burglaries in the town, and recited several, and testified his office had been burglarized several times during this period.

W. D. Robars, called for plaintiff; testified he had been on the police force over 20 years; had served two terms as chief of police; was a police officer on the night of the killing of Mr. Naill. Witness walked home that night in the middle of the street "because it was safer"; that if it was dark or witness was late getting in. he walked in the middle of the street, because there had been so much thieving, and some "hold-ups," most of them in the business district, some in the suburbs.

Dr. R. P. Koons testified to finding the

body of "Jim" Naill, and it "looked to me as if he started around the tree and some one shot him right there because he never moved. His death was instantaneous. Yes, he run around the tree, and then probably when the bullet was fired, it killed him that quick and he dropped with his head in the mud. He never moved a quarter of an inch after he fell."

Miss Laura Cook testified she was in the library with Mrs. Naill, when they heard a foot-step. Mrs. Naill said: "There's Mr. Naill now," and immediately she heard two voices. but "could not distinguish the words;" "it appeared as if one was accosted and resented it," then she immediately heard the shot that killed Mr. Naill; witness heard a step, "and the person who took that step must have just stepped out from behind that fence" (the fence with the vines on it running out to the sidewalk where deceased met his death).

The evidence further disclosed the sum of $15, and an old silver watch was found in the pockets. and the defendant from this fact, argues in his brief that the injuries were not inflicted and the death occasioned for the sole purpose of robbery or burglary, but with this theory of defendant we cannot agree.

The evidence discloses that immediately upon the shot being fired windows and doors were thrown open, and the perpetrator of the crime given no opportunity to rifle the pockets of the deceased and commit robbery, if such was his intention. The criminal was never apprehended, and if he had been arrested and proven guilty of the crime, might have stood mute, and neither confessed the crime or the motive therefor, and in that event, it would, in an action on the policy of insurance. have been a fact for the jury to determine from all the circumstances. whether or not robbery was the motive. and in this case, we feel there was sufficient evidence to warrant the submission of the case to the jury for their determination. from all proven facts and circumstances, what the real purpose was, that actuated the killing of deceased, and the court in sustaining the demurrer invaded the province of the jury, and committed reversible error by withdrawing the case from their consideration and discharging. the jury and rendering judgment for the defendant.

Where the perpetrator of such a crime is arrested, evidence may be introduced tending to show a grudge, an enmity, a desire for revenge for some real or fancied wrong, sudden quarrel, or if the assassin did not know the deceased. inference might be drawn that robbery was intended, and where the assassin is unknown, the circumstances surrounding the death are the only guides pointing the way to the motive for the crime.

The defendant demurred to the evidence and such demurrer is subject to the well-established rule:

"A demurrer to the evidence admits all facts which the evidence in the slightest degree tends to prove. and all the inferences or conclusions which may be reasonably and logically drawn from the evidence." Edmission v. Drumm-Flato Com. Co., 13 Okla. 440, 173 Pac. 958; Shawnee Light & Power Co. v. Sears, 21 Okla. 13, 95 Pac. 448; Ziska v. Ziska, 20 Okla. 634, 95 Pac. 254; Anatubby v. Pennington, 46 Okla. 221, 148 Pac. 828; Oklahoma Hospital v. Brown, 87 Okla. 46, 208 Pac. 785; Stuard v. First State Bank, 88 Okla. 89, 211 Pac. 1027; Rosenburg v. Olsan. 88 Okla. 252, 212 Pac. 746; Hughes v. Senter, 88 Okla. 491, 212 Pac. 311.

"If the inference to be drawn from the evidence is a reasonable one, although not a necessary one. the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference." Miller v. Marriott 48 Okla. 179, 149 Pac. 1164; Sartain v. Walker, 60 Okla. 258, 159 Pac. 1069; Singer v. Citizens Bank of Headrick, 79 Okla. 267, 193 Pac. 41.

In the absence of any direct evidence it cannot be said the inference to be drawn from the circumstances surrounding the tragedy would be favorable to the theory of murder, any more so than the theory of intent to commit robbery.

In Missouri, K. & T. Ry. Co. v. Simerly. 72 Okla. 251, 180 Pac. 551, this court quotes with approval from Chicago. R. I. & P. Ry. Co. v. Wood. 66 Kan. 613, 72 Pac. 215, as follows:

"Circumstantial evidence in a civil case. in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable hypothesis. The jury are not infrequently called on to decide between two or more theories, and in doing so may exercise their own best judgment in accordance with their oath-bound conscience. This must necessarily be so. for it is the province of the jury and not of the judge to determine whether the evidence better supports this or that theory. We invade their domain if we shall require them to say that a given set of circumstances are as consistent with one theory as with another. This court in a very recent case (Railroad v. Perry. 65 Kan. 792. 70 Pac. 876), had occasion to quote with approval the rule laid

down by Professor Greenleaf upon this subject, which is as follows:

' "In civil cases it is sufficient if the evidence on the whole agrees with and supports the hypothesis which it is adduced to prove'."

In view of the decision herein, referred to, and in view of the circumstances surrounding this case, we do not feel at liberty to say that no inferences could be drawn therefrom supporting the hypothesis of intent to commit robbery, and. for the errors of the court as set forth herein, the judgment of the court below should be reversed, with instructions to grant the plaintiff a new trial.

By the Court: It is so ordered.