## UNITED STATES v. MULLENDORE et al.
### No. 1046.

Circuit Court of Appeals, Tenth Circuit.
Nov. 30, 1934.

Chester A. Brewer, of Tulsa, Okl. (C. E. Bailey, U. S. Atty., of Tulsa, Okl., and Louis N. Stivers, Osage Tribal Atty., of Pawhuska, Okl., on the brief), for the United States.

John T. Craig, of Pawhuska, Okl. (Frank T. McCoy and John R. Pearson, both of Pawhuska, Okl., on the brief), for appellees.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The United States instituted this action in equity on behalf of Stephen J. Tucker, Jr., a member of the Osage Tribe of Indians, twenty-six years of age, having one-eighth degree of Indian blood and without a certificate of competency, against E. C. Mullendore, Sr., E. C. Mullendore, Jr., and Mullendore Ranch Company, to recover the reasonable value of the use of certain land for grazing purposes during the years 1930, 1931, and 1932 and to enjoin the defendants from further using it for that purpose.

The defendants denied liability and alleged by cross-bill that Tucker caused a fire on his land and negligently permitted it to escape therefrom, cross to defendants' premises, and destroy hay, grass, and posts worth $160. Recovery for that was sought.

The stipulated facts are: E. C. Mullendore, Jr., owned more than 3,000 acres of land situated in Osage county, Okl. It was fenced as a pasture for grazing cattle. Tucker owned 480 acres within the pasture not separated by fence from the other land. It was purchased from surplus funds. The deeds conveying it to him each contained a provision that it should not be alienated without the consent of the Secretary of the Interior. During the years in question, Mullendore grazed cattle on the pasture, but not more than his own grass and water would support. Due to the fact that the Tucker land was not fenced separately, the cattle wandered upon it and grazed thereon, but Mullendore neither drove nor held them there. And he did not assert possession of it or interfere in any manner with the right or privilege of the Secretary of the Interior or Tucker to fence, control, or use it.

The case was voluntarily dismissed as to E. C. Mullendore, Sr., and Mullendore Ranch Company, and the court dismissed both the bill and cross-bill. The United States and E. C. Mullendore, Jr., appealed from the respective parts of the decree adverse to them, but Mullendore's appeal was subsequently dismissed. 69 F.(2d) 1013.

The Act of Congress approved March 3, 1921 (41 Stat. 1249), conferred citizenship upon all members of the Osage Tribe of Indians, removed restrictions upon alienation of the allotted lands of adult members of less than one-half Indian blood, and authorized quarterly payments to each adult member having a certificate of competency of his pro rata share of tribal funds. It further authorized quarterly payments of $1,000 to adult members not having certificates of competency. The remainder of their tribal income, called surplus funds, remains in trust under the control of the Secretary of the Interior. Work v. U. S. ex rel. Lynn, 266 U. S. 161, 45 S. Ct. 39, 69 L. Ed. 223. The statute was amended by the Act of February 27, 1925 (43 Stat. 1008 [25 USCA § 331 note]), but the amendment has no material bearing here. The land owned by Tucker was purchased with surplus funds upon authorization of the Secretary. It is conceded by the parties that the provision contained in each of the deeds of conveyance to him is valid and that the land is inalienable except with the sanction of the Secretary. See Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259.

Section 9040, Oklahoma Statutes 1931, applies to districts composed of two or more sections of land, two-thirds of which is unsuitable for cultivation and is being used for grazing purposes. The pertinent part provides:

"If the owner or lessee of any such grazing district encloses therein the lands of another, which lands are not being used for agricultural purposes, neither said owner or lessee or the owner or the lessee of such lands so enclosed, shall be liable in any sum for permitting their respective stock, which are being pastured on their said lands, to stray on any of the lands in said grazing district; provided, that no such owner or lessee who is grazing stock at large in said district, shall graze therein more stock than the water and grass of his own lands will support."

By express provision the statute excludes from its operation forty named counties within the state and therefore applies exclusively to the remaining thirty-seven. The parties stipulated that the Mullendore land was of the size, class, and kind described.

It is said at the outset that, in the absence of an express understanding or agreement, one using the property of another in Oklahoma is impliedly liable for the value of that use and that a lease effects alienation. Section 10915, Oklahoma Statutes 1931; Bilby v. Gilliland, 41 Okl. 678, 137 P. 687, 139 P. 988, Anoatubby v. Pennington, 46 Okl. 221, 148 P. 828, and Eldred v. Okmulgee Loan & Tr. Co., 22 Okl. 742, 98 P. 929, are relied upon to sustain the contention. From that it is urged that the general rule applies here; that Mullendore's use of the land owned by Tucker constituted an alienation to that extent and that the above-quoted statute cannot intervene to exonerate him from

liability therefor because it would contravene the superior authority of the United States against alienation of restricted property belonging to an Indian without the consent of the Secretary of the Interior.

The statute is merely a police regulation creating an equitable rule to govern the rights of two or more owners of stock being grazed in a common inclosure. It is manifestly fair and reasonable, and operates alike upon all those having land and water in a common inclosure with others. It accords the same rights and privileges to whites and Indians, and does not discriminate against the latter. Mullendore did not place more cattle in the pasture than his own grass and water would support. Tucker had the right to place all the stock in it which his grass and water would sustain. Mullendore did not interfere in anywise with the free and untrammeled exercise of that privilege and it is difficult to conceive how Tucker was injured. If Mullendore had fenced the land apart from the remainder of the pasture, it would have been useless to Tucker unless he either placed his own stock upon it or leased it to others for that purpose, and he or his lessee could have done that as the situation existed. There was no alienation of the land because it was subject to Tucker's possession, use, and enjoyment at all times and the statute absolving Mullendore from liability does not impinge upon the superior right of the United States to control and manage the restricted property of an Indian.

The next contention advanced relates to the constitutionality of the statute. It is asserted that since it expressly excludes forty named counties and consequently does not operate throughout the geographical confines of the state, it violates section 59, article 5, of the state Constitution. That section provides:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

▮▮ The requirement of generality and uniformity thus exacted does not necessarily mean that a statute must operate upon every person and in every locality within the state. A law may be general and uniform within the meaning of the constitutional provision, if it operates alike upon all within designated classes and places. The Legislature has power to classify persons or counties to be included within a statute. That classification must not be unreasonable, arbitrary, or capricious. On the contrary, it must be rea-

sonable and substantial. Those included must bear some distinctive characteristics from those excluded. Burks v. Walker, 25 Okl. 353, 109 P. 544; Hatfield v. Garnett, 45 Okl. 438, 146 P. 24; Key v. Donnell, 107 Okl. 157, 231 P. 546; Roberts v. Ledgerwood, 134 Okl. 152, 272 P. 448; State v. Board of Commissioners, 77 Kan. 527, 94 P. 1004.

▮ Manifestly, a statute of this kind would operate effectively in those portions of the state where the grazing of live stock is the primary use to which land is devoted. The Legislature may well have determined in its wisdom that, due to varying conditions in different parts of the state, the statute would meet the needs in certain counties in which large ranches inclosing lands and water owned by different stockmen are common, and would be wholly infeasible in other counties. These reasons suggest convincingly that the classification does not affirmatively appear to be unreasonable, arbitrary, or capricious. The statute was considered in a quite recent case. Noting that it classifies the counties, does not apply throughout the state, and without discussing its constitutionality, it was given effect. Yunker v. State (Okl. Cr. App.) 7 P.(2d) 916. It is presumed to be constitutional and there is nothing here which requires the overthrow of that presumption.

The decree is affirmed.